[No. 87674-6.   En Banc.]
Argued October 18, 2012.   Decided February 7, 2013.

PATTY J. GANDEE, *Individually and on Behalf of a Class, Respondent*, v. LDL FREEDOM ENTERPRISES, INC., ET AL., *Appellants*.

*Milton G. Rowland* and *John R. Nelson* (of *Foster Pepper PLLC*), for appellants.

*Darrell W. Scott* and *Boyd M. Mayo* (of *The Scott Law Group PS*), for respondent.

*George M. Ahrend* and *Bryan P. Harnetiaux* on behalf of Washington State Association for Justice Foundation, amicus curiae.

¶1 C. JOHNSON, J. — This case involves the enforceability of a binding arbitration clause included within a debt adjustment contract. The trial court denied the defendant's motion to compel arbitration, ruling that the motion was untimely and that the binding arbitration clause was unconscionable. We affirm the trial court's holding that the clause is unconscionable, which then requires us to decide whether this conclusion as to the validity of the binding arbitration clause is preempted by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, as recently determined by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion*, ___U.S.___, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). We find no preemption and affirm.

FACTS AND PROCEDURAL HISTORY

¶2 On May 6, 2008, the respondent, Patty Gandee, entered into a debt adjustment contract with appellants LDL Freedom Enterprises Inc. (Freedom) doing business as Financial Crossroads. As neither company was registered to do business in Washington, the contract was sent as part of a packet to Gandee's home. She filled out the packet and returned it to Freedom. Three years later, on May 9, 2011, Gandee filed a class action in Pierce County Superior Court, alleging violations of the debt adjusting act, chapter 18.28 RCW, and the Consumer Protection Act (CPA), chap-

ter 19.86 RCW. The claims were based on allegations that Freedom charged excessive fees for debt adjusting under Washington law. The defendants were served on May 18 and 19, 2011. On August 10, 2011, Freedom moved to compel arbitration and stay the superior court proceedings pursuant to the original contract. The contract contained the following arbitration and severability clauses:

> **Arbitration.** All disputes or claims between the parties related to this Agreement shall be submitted to binding arbitration in accordance with the rules of [the] American Arbitration Association within 30 days from the dispute date or claim. Any arbitration proceedings brought by Client shall take place in Orange County, California. Judgment upon the decision of the arbitrator may be entered into any court having jurisdiction thereof. The prevailing party in any action or proceeding related to this Agreement shall be entitled to recover reasonable legal fees and costs, including attorney's fees which may be incurred.
>
> **Severability.** If any of the above provisions are held to be invalid or unenforceable, the remaining provisions will not be affected.

Clerk's Papers (CP) at 75.

¶3 Gandee opposed the motion to compel arbitration, arguing that Freedom failed to move for arbitration within 30 days as required by the arbitration clause and that the arbitration clause was unconscionable. Freedom responded that these issues had to be resolved by the arbitrator. The trial court denied the motion to compel because it was not "timely brought," found the requirement that arbitration occur in Orange County unconscionable, and severed the attorney fee provision. Verbatim Report of Proceedings at 28. Freedom timely appealed the decision. We accepted direct review.

ANALYSIS

¶4 We review a trial court's decision to deny a motion to compel arbitration de novo. The party seeking to

avoid arbitration has the burden to show that the arbitration clause is unenforceable. Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Further, both state and federal law strongly favor arbitration and require all presumptions to be made in favor of arbitration. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004).

### a. Unconscionability

¶5 We begin our analysis by examining the substantive unconscionability of the clause at issue here because it illuminates why *Concepcion*, as applied to this case, is consistent with Washington law. In Washington, either substantive *or* procedural unconscionability is sufficient to void a contract. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004). Here, only substantive unconscionability is alleged.[1] A term is substantively unconscionable where it is " 'one-sided or overly harsh,' " " '[s]hocking to the conscience,' " " 'monstrously harsh,' " or " 'exceedingly calloused.' " *Adler*, 153 Wn.2d at 344-45 (internal quotation marks omitted) (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975); *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). Severance is the usual remedy for substantively unconscionable terms, but where such terms "pervade" an arbitration agreement, we "refuse to sever those provisions and declare the entire agreement void." *Adler*, 153 Wn.2d at 358.

¶6 Freedom devotes little effort in arguing that the terms of the arbitration clause are, in fact, conscionable. Rather, its argument centers on preemption and whether Gandee's arguments are "mooted" by Freedom's offer to waive objectionable provisions. Gandee argues that three

---

[1] Freedom argues that some modicum of procedural unconscionability must be shown to void a contract provision. Our cases hold otherwise. *Adler*, 153 Wn.2d at 347 ("substantive unconscionability alone can support a finding of unconscionability").

unconscionable provisions so permeate the arbitration clause as to make severance of the specific provisions impossible.

¶7 Gandee first challenges the venue provision and argues that the arbitration clause effectively denies her the ability to vindicate her rights. Both this court and the United States Supreme Court have recognized this type of prohibitive-cost challenge to mandatory arbitration clauses. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000); *Adler*, 153 Wn.2d 331. In *Adler*, this court adopted a burden-shifting analysis whereby the party seeking to avoid arbitration must present evidence showing that arbitration would impose prohibitive costs. "[A]n affidavit describing [the party's] personal finances as well as fee information obtained from the American Arbitration Association[ ]" can be sufficient to meet this burden. *Adler*, 153 Wn.2d at 353. The party seeking arbitration can then present offsetting evidence as to the likelihood of bearing those costs. *Adler*, 153 Wn.2d at 353. This was the approach utilized by the trial court in this case.

¶8 Gandee estimated her underlying claim to involve roughly $3,500 in actual damages.[2] She presented affidavits showing air transportation to Orange County would be approximately $334, hotel costs averaged $123 per night, and incidental costs would be $71 per day. She presented further evidence that the American Arbitration Association's (AAA) fees would be $4,775, as well as evidence that she is currently unemployed and that her husband's income is "substantially consumed" by other bills, and alleged that if she were forced to arbitrate in California she would have to forgo her claim. CP at 69. Because Gandee struggles financially (as presumably do all Freedom's customers) and the costs of arbitrating in California would exceed her claim, sufficient evidence was presented to make a prima facie case for a prohibitive-cost defense. *See also Walters v.*

---

[2] She may also be entitled to other relief under the CPA. *See* RCW 19.86.090.

*A.A.A. Waterproofing, Inc.*, 151 Wn. App. 316, 211 P.3d 454 (2009) (arbitral forum in Denver was inaccessible even though it was the employer's principal place of business).

¶9 Freedom then presented offsetting financial evidence. It argued that the clause does not require arbitration with the AAA but only that the rules of the AAA be followed. This assertion appears correct. However, Freedom failed to present any evidence as to what other arbitration organizations could be used or what they would cost. Freedom argued that Gandee failed to consider or include the cost savings of arbitration as opposed to litigation. Arbitration can be cheaper than litigation, and this is sometimes recognized in support of using arbitration. *See, e.g., Concepcion*, 131 S. Ct. at 1749 (recognizing potential cost benefits of arbitrating over litigating). However, none of the cases relied upon by Freedom acknowledge that these potential savings should be considered in this context.[3] Accordingly, the trial court properly found that Freedom failed factually to rebut Gandee's showing of financial hardship.

¶10 Gandee next addresses the "loser pays" provision, arguing, in essence, that the provision is one sided and harsh because if she prevails she is already entitled to costs and fees under the CPA but is forced to bear the risk of a negative outcome, despite the legislature's intent to encourage consumers to vindicate their rights. Freedom, relying on *Zuver*, argues that the arbitrator would be violating Washington law by awarding a prevailing defendant costs and fees. But this argument flips the situation in *Zuver*. There, the issue was the possibility that the arbitrator would refuse to award a prevailing *plaintiff* costs and fees

---

[3] *See, e.g., Green Tree*, 531 U.S. 79; *Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 224 P.3d 818 (2009), *aff'd on other grounds*, 173 Wn.2d 451, 268 P.3d 917 (2012); *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819, 970 P.2d 803 (1999) (cases in which the court evaluated whether arbitration effectively denied a plaintiff the ability to vindicate his or her rights without evaluating the potential cost savings of arbitration), *aff'd*, 140 Wn.2d 568, 998 P.2d 305 (2000).

as required under the CPA.[4] *Zuver*, 153 Wn.2d at 310-12. Thus, it was "mere speculation" to assume the arbitrator would violate Washington law by not awarding costs and fees to a prevailing plaintiff. Accordingly, the fee-shifting provision was enforceable. *Zuver*, 153 Wn.2d at 312. Here, Freedom attempts to apply the same reasoning in the context of a prevailing *defendant*. But neither the CPA nor any cases brought to our attention provide a blanket rule precluding recovery of costs and fees by a prevailing defendant where an enforceable agreement so provides. Because the "loser pays" provision serves to benefit only Freedom and, contrary to the legislature's intent, effectively chills Gandee's ability to bring suit under the CPA, it is one sided and overly harsh. Therefore, we hold it to be substantively unconscionable. *See also Adler*, 153 Wn.2d at 354-55 (clause requiring each party to bear his or her own costs and fees was substantively unconscionable in context of a fee-shifting statute); *Walters*, 151 Wn. App. 316 (applying similar reasoning to a "loser pays" provision).

¶11 Finally, Gandee challenges the 30-day provision. Both sides argue that the provision is ambiguous, potentially operating as either a private statute of limitations or a time frame within which a party must seek to compel arbitration. However, we find no ambiguity in the clause. It requires that "[a]ll disputes or claims . . . be submitted to binding arbitration . . . within 30 days from the dispute date or claim." CP at 75. A plain language reading of this provision indicates that Gandee supposedly had 30 days within which to bring her claim.

¶12 Generally, a private statute of limitations will control over general statutes of limitation " ' "unless prohibited by statute or public policy, or unless [it is] unreasonable." ' " *Adler*, 153 Wn.2d at 356 (quoting Resp'ts'

---

[4] The possibility that a prevailing *plaintiff* would lose his or her right to costs and fees was also at issue in *Adler*. There, a fee-shifting provision required each party to bear its own costs, and we were concerned that the "provision effectively undermine[d] a plaintiff's rights to attorney fees under [the statute]." *Adler*, 153 Wn.2d at 355.

Br. at 43 (quoting *Ashburn v. Safeco Ins. Co. of Am.*, 42 Wn. App. 692, 696, 713 P.2d 742 (1986))). Here, the provision shortens the statute of limitations from the four years provided by the CPA to 30 days. In *Adler*, we held a shortening of the statute of limitations from three years to 180 days to be substantively unconscionable. *Adler*, 153 Wn.2d at 355-58. Consistent with *Adler*'s holding, we find the statute of limitations provision here to be substantively unconscionable.

¶13 Having found all three challenged provisions unconscionable, we are left to determine whether the proper remedy is severance of the provisions or invalidation of the arbitration clause. Generally, courts are "loath to upset the terms of an agreement and strive to give effect to the intent of the parties," especially where the agreement contains a severance clause. *Zuver*, 153 Wn.2d at 320. However, where unconscionable terms "pervade" an agreement, courts should refuse to rewrite the agreement and instead invalidate the provision. *Zuver*, 153 Wn.2d at 320.

¶14 Here, we are confronted with a short, four-sentence arbitration clause containing three unconscionable provisions. Severing all three provisions would significantly alter both the tone of the arbitration clause and the nature of the arbitration contemplated by the clause. The location, fee structure, and timing of the arbitration would be changed. Little would be left of the arbitration "agreed" to by the parties. On these facts, the unconscionable terms pervade the entire clause and severing three out of four provisions would require essentially a rewriting of the arbitration agreement. Thus, the arbitration clause cannot be severed from the overall contract.

¶15 Freedom attempts to escape this result by offering to "waive" objectionable provisions, which it suggests somehow moots Gandee's challenges. Contracts are generally interpreted as of the time of contracting, making any subsequent offer to waive unconscionable terms irrelevant. *See, e.g., Zuver*, 153 Wn.2d at 310 n.7. We have, however,

recognized an exception to this rule in the context of arbitration agreements. *Zuver*, 153 Wn.2d 293.

¶16 But *Zuver* did not announce a broad rule requiring courts to simply accept all offers of waiver, especially where the offer is presented in appellate briefing. Here, Freedom writes in its final briefing that "if this Court finds a provision offensive, Freedom waives it." Reply Br. at 20. This promise is essentially meaningless and contrary to the general approach to view the contractual terms at the time of formation. It also provides little to no benefit to Gandee in this case to accept the "offer" after an appellate determination. Given our determination that the provisions are substantively unconscionable, Freedom has no choice but to "waive" them. Strong reasons exist for encouraging contracts to be conscionable at the time they are written, and allowing after-the-fact waiver to moot unconscionability challenges is the exception, not the rule.[5] Parties should not be able to load their arbitration agreements full of unconscionable terms and then, when challenged in court, offer a blanket waiver. This would encourage rather than discourage one-sided agreements and would lead to increased litigation. Any other approach is inconsistent with the principle that contracts—especially the adhesion

---

[5] As an example of an arbitration clause found to be fair and enforceable, consider the United States Supreme Court's discussion of the clause at issue in *Concepcion*:

"The revised agreement provides that customers may initiate dispute proceedings by completing a one-page Notice of Dispute form available on AT & T's Web site. AT & T may then offer to settle the claim; if it does not, or if the dispute is not resolved within 30 days, the customer may invoke arbitration by filing a separate Demand for Arbitration, also available on AT & T's Web site. In the event the parties proceed to arbitration, the agreement specifies that AT & T must pay all costs for nonfrivolous claims; that arbitration must take place in the county in which the customer is billed; that, for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; that either party may bring a claim in small claims court in lieu of arbitration; and that the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages. The agreement, moreover, denies AT & T any ability to seek reimbursement of its attorney's fees, and, in the event that a customer receives an arbitration award greater than AT & T's last written settlement offer, requires AT & T to pay a $7,500 minimum recovery and twice the amount of the claimant's attorney's fees." *Concepcion*, 131 S. Ct. at 1744.

contracts common today—should be conscionable and fairly drafted.

¶17  In this case, Freedom made only one arguably legitimate attempt at waiver: its offer at the trial court to waive the venue provision. However, as discussed above, the overall clause remains unconscionable. For these reasons, we hold the arbitration clause unenforceable.

b. Preemption

¶18  Freedom argues that the above analysis is preempted by the United States Supreme Court's opinion in *Concepcion*. In *Concepcion*, the United States Supreme Court examined the *Discover Bank*[6] rule, a California decisional rule that invalidated most class-action waivers in adhesion contracts where there were predictably small amounts of damages. Importantly, the arbitration clause at issue in that case contained several provisions arguably favorable to the consumer. For example, under the contract, AT&T agreed to pay all costs for nonfrivolous claims, arbitration was to take place in the county of the consumer's billing address, and AT&T could never recover its attorney fees.[7] The United States Supreme Court recognized that both the trial and appellate courts had described the arbitration clause favorably before invalidating it under the broad *Discover Bank* rule, under which few arbitration clauses could be valid. The Court discussed what it considered to be the many benefits of arbitration to consumers and approved of the lower court's finding that the "Concepcions were *better off* under their arbitration agreement" than as members of a class. *Concepcion*, 131 S. Ct. at 1753. In the end, the majority held that under the *Discover Bank* rule, even those arbitration clauses that were fairly and evenly drafted were not put on "equal footing with

---

[6] *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 113 P.3d 1100, 30 Cal. Rptr. 3d 76 (2005), *abrogated on other grounds by Concepcion*, 131 S. Ct. 1740.

[7] The United States Supreme Court's full description of the clause at issue in *Concepcion* is reproduced *supra* note 5.

other contracts" and "[stood] as an obstacle to the accomplishment of the FAA's objectives." *Concepcion,* 131 S. Ct. at 1745, 1748. Accordingly, the Court held the rule to be preempted.

¶19 Read in context, the holding in *Concepcion* is less than surprising. When *Discover Bank* was applied in *Concepcion,* the rule became, in essence, an overbroad rule invalidating an arbitration clause that might be otherwise conscionable under California law. As our above analysis shows, the arbitration clause at issue here contained numerous unconscionable provisions based on the specific facts at issue in the current case. *Concepcion* provides no basis for preempting our relevant case law, nor does it require the enforcement of Freedom's arbitration clause.[8]

## Conclusion

¶20 We affirm the trial court's denial of the motion to compel arbitration. The arbitration clause itself is so permeated with unconscionable provisions as to make severance impossible. Without an enforceable arbitration clause, the plaintiff cannot be compelled to arbitrate. Accordingly, we remand for further proceedings consistent with this opinion.

MADSEN, C.J.; OWENS, FAIRHURST, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ.; and CHAMBERS, J. PRO TEM., concur.

---

[8] Having found the arbitration clause to be substantively unconscionable, we need not address the issue of whether the trial court improperly ruled on the timeliness of the motion to compel arbitration.