**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ROSITA H. SMITH, individually and on behalf of all similarly situated Washington State Residents, *Plaintiff-Appellee*, <br><br> v. <br><br> JEM GROUP, INC., a Nevada corporation, *Defendant-Appellant*. | No. 11-35964 <br><br> D.C. No. 3:11-cv-05054-RJB <br><br><br> OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted
March 7, 2013—Seattle, Washington

Filed December 12, 2013

Before: David M. Ebel,[*] William A. Fletcher
and Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge W. Fletcher

---

[*] The Honorable David M. Ebel, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

## SUMMARY[**]

### Arbitration

The panel affirmed the district court's denial of a motion to compel arbitration arising from an arbitration clause in an attorney retainer agreement.

The panel held that the district court correctly decided that it, rather than an arbitrator, should decide whether the arbitration clause in the attorney retainer agreement was unconscionable. The panel also held that the district court properly concluded, using non-preempted Washington law, that the arbitration clause was unenforceable.

## COUNSEL

Christopher Glenn Emch (argued), Foster Pepper PLLC, Seattle, Washington for Defendant-Appellant.

Toby J. Marshall, Jennifer Rust Murray, Erika L. Nusser (argued), Beth Ellen Terrell, Terrell Marshall Daudt & Willie PLLC, Seattle, Washington; Darrell William Scott, The Scott Law Group, P.S., Spokane, Washington, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

W. FLETCHER, Circuit Judge:

JEM Group, Inc. ("JEM") appeals from the district court's denial of its motion to compel arbitration. The district court held that it had authority to decide whether an arbitration clause contained in an attorney retainer agreement is unconscionable. On the merits, the court held that the clause is unconscionable under Washington law.

We affirm.

## I.  Background

Rosita Smith is the lead plaintiff in a proposed class action against JEM, Marshall Banks, LLC ("Marshall Banks"), and Legal Helpers Debt Resolution, LLC ("Legal Helpers"). According to the complaint, JEM is a "back-end" debt-relief company that "implements, manages, and maintains the debt-relief programs marketed and purportedly performed by 'front-end' affiliate debt-settlement companies" including Marshall Banks. Marshall Banks, also known as "Kazlow and Tucker Debt Relief, LLC" ("Kazlow and Tucker"), is a California "front-end" debt-relief company that markets debt-relief services to consumers. Kazlow and Tucker is a fictitious company that is not registered in any state. Legal Helpers is a Nevada limited liability company and Illinois law firm also known as Macey, Aleman, Hyslip & Searns. The Illinois Department of Financial and Professional Regulation recently issued a cease-and-desist order prohibiting Legal Helpers from engaging in debt adjusting practices in Illinois. It wrote, "Despite the name, 'Legal Helpers,' the company does not provide legal

representation to consumers or otherwise act in an attorney capacity." *In the Matter of Legal Helpers Debt Resolution LLC*, No. 10CC311, at *3 (Ill. Dep't of Fin. & Prof'l Regulation, Div. of Fin. Insts. Aug. 1, 2011).

Under Washington law, a debt-settlement service provider may not charge more than twenty-five dollars in an initial payment, fifteen percent of any single payment, or fifteen percent of the debtor's total debt. Wash. Rev. Cod. § 18.28.080(1). The statute provides an exception for debt-adjustment services performed by attorneys when those services are "solely incidental to the practice of their professions." *Id.* § 18.28.010(1)(a). According to the complaint, debt-adjustment companies, including JEM and Marshall Banks, have associated with law firms such as Legal Helpers that are willing to lend their names to debt-adjustment companies in an attempt to avoid the limitations such as those contained in the Washington statute. JEM and Marshall Banks charge fees to Washington consumers that exceed the statutory limitations on fees that may be charged by debt-collection agencies.

In March 2010, Smith received a solicitation from defendants offering debt settlement services. At the time, she was struggling financially as a result of her husband's recent death and her own declining health. In early April, Smith signed a twenty-one page contract sent to her by Kazlow and Tucker. The contract included a four-page, fine-print attorney retainer agreement ("ARA") between Legal Helpers and Smith. The ARA contained an arbitration clause on the fourth page. There was no explanation of the arbitration clause either in the ARA or the rest of the contract. The instruction on the cover page, sent by Kazlow and Tucker, was uninformative. It said only: "Please sign at every X.

Please include your voided check and copy of your billing statements.  And fax to [Kazlow and Tucker's fax number]."

Smith filed a class action complaint against JEM, Marshall Banks, and Legal Helpers in federal district court, alleging breach of fiduciary duty, unjust enrichment, aiding and abetting, civil conspiracy, and breach of Washington consumer protection statutes.  Defendants all moved to compel arbitration.  JEM and Marshall Banks, who were not parties to the ARA, contended that they were third-party beneficiaries of the ARA, and that they were therefore entitled to arbitration of any claims against them.  Smith opposed the motions, contending that the arbitration clause within the ARA was unconscionable.  The district court denied defendants' motions to compel, and defendants appealed.  Marshall Banks and Legal Helpers have dismissed their appeals, leaving JEM as the only remaining appellant.

## II.  Jurisdiction and Standard of Review

We have appellate jurisdiction under 9 U.S.C. § 16(a)(1)(B) and 28 U.S.C. § 1291.  "We review *de novo* district court decisions about the arbitrability of claims." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013).

## III.  Discussion

### A.  Determination by the District Court

JEM argues that an arbitrator, rather than the district court, should have determined whether the arbitration clause is unconscionable.  JEM argues under *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc), that because the "crux" of Smith's complaint is that the contract as a whole is invalid, and the complaint does not specifically attack the arbitration clause in the ARA as unconscionable, an arbitrator rather than the court should have decided whether the arbitration clause was unconscionable.  We disagree.

We have held that "the question of arbitrability is for the court to decide regardless of whether the specific challenge to the arbitration clause is raised as a distinct claim in the complaint" so long as "the plaintiff's challenge to the validity of an arbitration clause is a distinct question from the validity of the contract as a whole . . . ."  *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 998 (9th Cir. 2010).   JEM does not contest that Smith separately challenged the arbitration clause as unconscionable, but it argues that her challenge to the clause could not have been the "crux of the complaint" because the challenge was made for the first time not in Smith's complaint but in her opposition to the motion to compel arbitration.   We specifically rejected such an argument in *Bridge Fund Capital*.   JEM contends that our decision in *Bridge Fund Capital* is fatally inconsistent with *Buckeye* and *Nagrampa*.

Even if *Bridge Fund Capital* were incorrectly decided, we would, of course, be bound to follow it.  But we have no doubt about its correctness.  In *Buckeye*, the Supreme Court considered whether a challenge to the validity of an arbitration agreement was a challenge "specifically [to] the validity of the agreement to arbitrate" or a challenge to "the contract as a whole, either on a ground that directly affects the entire agreement . . . or on the ground that the illegality of one of the contract's provisions renders the whole contract

invalid." 546 U.S. at 444. The Court held that because the "crux of the complaint" filed by the plaintiffs was a challenge to the contract as a whole, the district court could not properly consider the argument; rather, arbitrability should be considered by the arbitrator in the first instance. *Id.* at 444–46. In *Nagrampa*, we construed *Buckeye* to mean that "challenges specifically to the arbitration agreement were for the court to decide," even if these were not the sole or predominant challenges in the complaint. 469 F.3d at 1269.

In *Bridge Fund Capital* we considered "a third scenario not described in either *Buckeye* or *Nagrampa*; namely, a specific challenge to the arbitration clause that is not raised as a separate claim in the complaint." 622 F.3d at 1001. The relevant facts in *Bridge Fund Capital* were the same as in the case before us. Plaintiffs had entered into a franchise agreement that contained an arbitration clause. *Id.* at 999. Plaintiffs filed suit, alleging breach of the agreement, fraud and deceit, negligent misrepresentation, and violation of California law. *Id.* They alleged that provisions of the agreement were unconscionable, but they did not specify the particular provisions. *Id.* Defendant moved to compel arbitration. *Id.* Plaintiffs opposed the motion, specifically contending for the first time that the arbitration clause was unconscionable. *Id.* After carefully analyzing *Buckeye* and *Nagrampa*, we concluded that the district court had the authority to decide whether the arbitration clause was unconscionable. *Id.* at 1000–02. We held that it did not matter that plaintiffs had not specifically alleged unconscionability of the clause in their complaint. *Id.* at 1001. It was sufficient that they raised that issue in their response to the motion to compel. *Id.* at 1002.

Our decision in *Bridge Fund Capital* rests on a recognition of the nature of arbitration agreements. Many contracts, including those at issue in *Bridge Fund Capital* and in the case before us, provide for compulsory arbitration at the choice of one or both of the parties; if neither party asks for arbitration, any dispute that arises under the contract may be brought to a court. Under such a contract, a challenge to the arbitration clause would not be a proper part of a complaint if the plaintiff prefers a decision from a court. As we observed in *Bridge Fund Capital*,

> in cases in which the arbitration clause's invalidity is an entirely distinct issue from the contract claims in the case—the clearest cases in which arbitrability is to be decided by the court—we would not generally expect the plaintiff to raise claims against the validity of the arbitration clause in the complaint, because such claims generally would be unrelated to plaintiff's principal prayer for relief.

*Id.* at 1001–02.

We therefore hold that the district court properly considered the validity of the arbitration clause.

### B. Unconscionability of the Arbitration Clause

Under Washington law, a contractual provision is unenforceable if it is procedurally unconscionable. *Nelson v. McGoldrick*, 896 P.2d 1258, 1264 (Wash. 1995) (en banc).

> Procedural unconscionability is determined in light of the totality of the circumstances, including (1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to understand the terms, and (3) whether the terms were hidden in a maze of fine print.

*Torgerson v. One Lincoln Tower, LLC*, 210 P.3d 318, 322 (Wash. 2009) (en banc) (internal quotation marks omitted). The district court concluded that all three of the listed circumstances were present in Smith's agreement to the arbitration clause in the ARA. The court therefore held the clause procedurally unconscionable.

JEM does not argue on appeal that if Washington law applies to this case, the district court applied it incorrectly. However, it argues that Washington law does not apply because it is preempted by the Federal Arbitration Act ("FAA"), as interpreted by the Supreme Court in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). We disagree.

Under Washington law, an attorney fee agreement, or a provision thereof, is unenforceable if the attorney has not complied with the Washington Rules of Professional Conduct. *Valley/50th Ave., L.L.C. v. Stewart*, 153 P.3d 186, 189 (Wash. 2007) (en banc). An attorney must provide a "reasonable and fair disclosure of material elements of the fee agreement" to the client. Wash. Rules of Prof'l Conduct R. 1.5(a)(9). Advisory opinions interpreting the professional rules are persuasive but not binding authority under Washington law. *In re Disciplinary Proceeding Against DeRuiz*, 99 P.3d 881, 888 (Wash. 2004) (en banc). In

Opinion 1670, the Washington State Bar Association ("WSBA") specified that an arbitration provision may be included in an attorney fee agreement only if the attorney provides full disclosure of the provision to the client. The Opinion states that

> there is no per se prohibition in the Rules of Professional Conduct against including an arbitration provision in a fee agreement with a client, but that it (1) must be consistent with a lawyer's fiduciary obligations and statutory law such as RCW Ch. 4.24; and (2) it properly must be done only with full disclosure to the client.

An ABA Formal Opinion similarly concludes that arbitration agreements are permissible in ARAs only if the client has been given "sufficient information to permit her to make an informed decision about whether to agree to the inclusion of the arbitration provision in the retainer agreement." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002). The district court relied on Professional Conduct Rule 1.5, as well as the WSBA and ABA opinions, to conclude that an arbitration clause is a material element of an ARA, and that such a clause is unenforceable under Washington law unless the attorney has fully disclosed the arbitration clause to his or her client.

For several reasons, *Concepcion* does not support a conclusion that Washington procedural unconscionability law is preempted. First, Washington law does not unduly burden arbitration. *Concepcion* held that a California law forbidding a class-action waiver provision in arbitration agreements was preempted by the FAA. 131 S. Ct. at 1750–51. The Court

provided additional examples of arbitration-specific rules that would be preempted by the FAA, such as state rules declaring unconscionable any arbitration clause that does not provide for judicially monitored discovery, requiring arbitration to proceed in accordance with the Federal Rules of Evidence, or requiring final disposition by a jury. *Id.* at 1747. Such rules, the Court explained, would "stand as . . . obstacle[s] to the accomplishment of the FAA's objective[]," which is to ensure the enforcement of private arbitration agreements. *Id.* at 1748. In contrast to those rules, the Washington procedural unconscionability rule applied in this case does not burden arbitration. Washington law provides only that an arbitration clause in an ARA is material, and that an arbitration clause is unenforceable if the attorney fails to disclose it fully. This law does not "make[] the process slower, more costly, [or] more likely to generate [a] procedural morass." *Concepcion*, 131 S. Ct. at 1751.

Second, Washington procedural unconscionability law is concerned only with the process that results in the formation of the agreement. The state rule at issue in *Concepcion*, as well as the rules provided by the Court as examples, were preempted because they specified the manner in which the arbitration could or should be conducted. Unlike those rules, the Washington law at issue says nothing about the manner in which an arbitration is to be conducted. As the Eleventh Circuit has observed, "[t]he Supreme Court has consistently recognized" that "unconscionability doctrine[s] concerned with defects in the process of contract formation" are "valid under 9 U.S.C. § 2, and has repeatedly identified unconscionability as one of the general principles of contract law that, if applied impartially, may be applied to arbitration agreements under § 2." *In re Checking Account Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1278 (11th Cir. 2012).

Third, Washington procedural unconscionability law applicable to ARAs is not specifically aimed at arbitration clauses. Washington law, including Opinion 1670, does not single out or place any additional burden on arbitration provisions. Rather, Opinion 1670 merely clarifies that an arbitration clause is among the material provisions in an ARA that an attorney, acting as a fiduciary, must disclose to his or her client. An attorney must disclose the arbitration agreement only to the same degree that he or she must disclose all material terms in an ARA.

## Conclusion

We conclude that the district court correctly decided that it, rather than an arbitrator, should decide whether the arbitration clause in the ARA was unconscionable. We further conclude that the district court properly decided, using non-preempted Washington law, that the arbitration clause was unenforceable.

**AFFIRMED**.