IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHERRIE KAY GORDEN and DEBBIE KAY MILLER, individually and on behalf of a Class of similarly situate Washington residents, | ) ) ) ) ) | No. 31399-9-III |
| Respondents, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| LLOYD WARD & ASSOCIATES, P.C. a Texas Domestic Professional Corporation; LLOYD WARD, P.C. a Texas Domestic Professional Corporation; THE LLOYD WARD GROUP, P.C., a Texas Domestic Professional Corporation, LLOYD EUGENE WARD and AMANDA GLEN WARD, individually and on behalf of the marital community; SILVER LEAF DEBT SOLUTIONS, LLC, a Texas Limited Liability Company; MICHAEL MILES, individually and on behalf of the marital community of MICHAEL MILES and JANE DOE MILES, and JOHN and JANE DOES 1-5, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Appellants. | ) | |

BROWN, J. — Respondent Washington debtors, Sherrie K. Gorden and Debbie K.

Miller, individually and on behalf of a class of similarly situated Washington residents,

No. 31399-9-III
*Gorden v. Lloyd Ward & Assocs.*

sued appellant Texas debt adjusting service providers for violating Washington's Debt Adjusting Act (DAA), chapter 18.28 RCW and Washington's Consumer Protection Act (CPA), chapter 19.86 RCW. Lloyd Ward & Associates, P.C.; Lloyd Ward, P.C.; The Lloyd Ward Group, P.C.; Lloyd E. Ward (a Lawyer) and Amanda G. Ward; Silver Leaf Debt Solutions, LLC; Michael Miles, individually and on behalf of the marital community of Michael Miles and Jane Doe Miles; and John and Jane Does 1-5 (collectively LWG) appeal the trial court's denial of their arbitration and dismissal requests. LWG contends the trial court erred in deciding the contract was unconscionable and did not reserve all arbitration questions to the arbitrator. LWG additionally contends the Washington trial court lacked personal jurisdiction over the Texas residents, and is by later settlement moot. We disagree, and affirm.

## FACTS

Ms. Gorden and Ms. Miller desired debt reduction assistance. After seeing an Internet advertisement, each separately enrolled in LWG's debt settlement program and electronically signed a client services agreement from Washington containing an attorney retainer agreement partly providing, "By this Agreement, Client retains Attorney for the limited and express purposes of providing legal and administrative services limited to Savings and Debt Negotiation with respect to Client's existing debt and current creditors, as identified by Client." Clerk's Papers (CP) at 36.

The agreement partly states it is "governed by the laws of the State of Texas, without regard to the conflict of law rules of that state. Further, venue and jurisdiction

2

for any dispute or conflict arising from or in any way related to this Agreement shall be exclusively in Dallas, Dallas County, Texas." CP at 37. Relating to arbitration, the agreement sets venue and jurisdiction in Collin County, Texas:

> If, after giving LWG thirty (30) days notice of any complaint, you remain unsatisfied with LWG's response to your complaint, you hereby agree to mediate and/or arbitrate any complaint against Firm prior to the initiation of any public or private complaints or claims of any kind against LWG or any of its attorneys. You agree to submit any dispute over the amount of fees charged to you to the Fee Dispute Committee of the Collin County Bar Association, State Bar of Texas. Client understands that this agreement is performable in Collin County, Texas and hereby consents to venue and jurisdiction in Collin County, Texas under Texas state law for any dispute arising hereunder. The parties will submit all disputes arising under or related to this Agreement to binding arbitration according to the then prevailing rules and procedures of the American Arbitration Association. Texas law will govern the rights and obligations of the parties with respect to the matters in controversy. The arbitrator will allocate all costs and fees attributable to the arbitration between the parties. The arbitrator's award will be final and binding and judgment may be entered in any court of competent jurisdiction.

CP at 37.

No attorney or attorney's representative discussed these provisions with the respondents, or advised them of the rights at stake. The respondents were not counseled or advised regarding the consequences of relinquishing the legal protections provided by Washington law or of the protections provided by Texas law. Ms. Gorden and Ms. Miller were not informed of the advantages or disadvantages of arbitration,

3

including the requirement that they must bring arbitration claims in Texas. No one explained the inconsistent and mutually exclusive venue and jurisdiction provisions.

The respondents made monthly payments as required under LWG's debt settlement program: Ms. Gorden paid several thousand dollars, while Ms. Miller paid $800. After getting continued calls from creditors, Ms. Gorden and Ms. Miller each contacted LWG and learned none of the money they paid into the program had been paid to creditors; rather, LWG applied the payments to their own fees. Ms. Gorden and Ms. Miller believed they were in worse financial situations than before they entered the program, with increased debt, less money available to pay debts, and damaged credit scores. Both lacked the resources to travel to Texas to arbitrate their claims. LWG offered to move arbitration to Washington.

Not wanting to arbitrate, the respondents sued LWG, alleging it violated the DAA and CPA by charging predatory fees. The respondents requested injunctive relief. The action was brought on behalf of Ms. Gorden and Ms. Miller, as well as a proposed class of all Washington residents who have paid debt adjuster fees to LWG in violation of Washington law. The class, however, has not been certified.

About six months after the respondents served the complaint on LWG, it unsuccessfully requested orders to compel arbitration and dismiss the complaint based on a lack of subject matter and personal jurisdiction. The trial court concluded the arbitration clause was invalid and decided for Washington jurisdiction. The trial court certified its ruling as a CR 54(b) final judgment. After LWG appealed, it made CR 68

4

No. 31399-9-III
*Gorden v. Lloyd Ward & Assocs.*

offers of judgment to both women on their individual claims.[1]  Ms. Gorden chose to

accept LWG's CR 68 offer on her individual claims; Ms. Miller did not.

## ANALYSIS

### A.  Ruling Denying Arbitration

The issue is whether the trial court erred by denying LWG's motion to compel

arbitration.  Preliminarily, LWG contends this appeal is moot because it made offers of

judgment to both Ms. Gorden and Ms. Miller.  An appeal is moot if it presents "purely

academic issues" and it is "not possible for the court to provide effective relief." *Klickitat

County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860

P.2d 390 (1993).  If an appeal is moot, it should be dismissed.  *Id.*  Generally, when

parties settle their dispute, an appeal becomes moot.  *Diaz v. Washington State Migrant

Council*, 165 Wn. App. 59, 64-65, 265 P.3d 956 (2011).

Here, Ms. Gorden accepted LWG's offer of judgment, receiving $11,147.73

($3,715.91 trebled for compensatory and exemplary damages), pre- and post-judgment

interest, and attorney fees.  LWG agreed to a "permanent injunction prohibiting [LWG]

from engaging in future business violative of chapter 18.28 RCW and/or chapter 19.86

RCW and from accepting any future debt adjustment clients from the State of

Washington." Appellant's Br., App. C.  Ms. Miller declined a similar offer.  Since Ms.

---

[1] Evidence regarding the offers of judgment is not included in this court's record; rather, it is contained in the appendix to the parties' briefs.  In general, the appendix to a parties' brief must not contain evidence not in this court's record without this court's permission.  *See* RAP 10.3(a)(8).  To the extent this evidence is necessary to review the parties' mootness issue, we allow the evidence.

5

Gorden has settled her dispute with LWG there is no effective relief this court may provide to her. But, Ms. Miller's issues survive.

Relying on *Genesis Healthcare Corp. v. Symczyk*, ___ U.S. ___, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013), LWG argues the suit became moot following its offers of judgment. In *Genesis*, an employee sought relief under the Fair Labor Standards Act (FLSA) on behalf of herself and all others similarly situated. The lower court dismissed the complaint for lack of subject matter jurisdiction after the employer extended an offer of judgment in full satisfaction of the employee's alleged damages, fees, and costs. Employee appealed. The appellate court reversed. Certiorari was granted. The United States Supreme Court held that collective action brought by a single employee on behalf of herself and all similarly situated employees for employer's alleged violation of the FLSA was no longer justiciable when, as conceded by the employee, her individual claim became moot as a result of the offer of judgment by employer in an amount sufficient to make her whole. *Id.* at 1531-32.

Here, unlike in *Genesis*, a remaining party, Ms. Miller, did not accept the offer of judgment and has not been made whole. In *Genesis* the single lead plaintiff received an offer of settlement that made her whole. Here, we reason Ms. Miller stands separately from Ms. Gorden. Thus, our case is significantly distinguishable from *Genesis* because Ms. Miller's claims remain justiciable.

*Genesis* is inapposite here for other reasons. The claim in *Genesis* was a "collective action" under the FLSA, not a class action under CR 23; the Supreme Court

6

noted the distinction in rejecting class action cases in its analysis. Furthermore, even in the statutory FLSA context, the Court did not resolve the question of whether a "full satisfaction" offer of settlement renders the plaintiff's claim moot. Rather, the Court noted that the Respondent had so stipulated in the lower court proceedings, and had not properly raised the issue by cross appeal.

Nevertheless, we note the Supreme Court has never considered, and the lower federal courts remain split, on the question of whether (and under what circumstances) the mooting of the named plaintiff's claims before a decision has been made on class certification will moot the action. *E.g., Genesis*, 133 S. Ct. at 1531-32; *Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 329-30, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980). The *Genesis* court noted some appellate courts "maintain that an unaccepted offer of complete relief alone is sufficient to moot the individual's claim." *Genesis*, 133 S. Ct. at 1529 n.4 (citing *Weiss v. Regal Collections*, 385 F.3d 337, 340 (C.A. 3 2004); *Greisz v. Household Bank (Il.), N. A.*, 176 F.3d 1012, 1015 (C.A. 7 1999). The court then noted, other courts have held that, in the face of an unaccepted offer of complete relief, district courts may still enter judgment in favor of the plaintiffs. *Genesis*, 133 S. Ct. at 1529 n.4 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 575 (C.A. 6 2009); *McCauley v. Trans Union, LLC*, 402 F.3d 340, 342 (C.A. 2 2005)). Under our facts, we find the reasoning and approach in *O'Brien* and *McCauley* more persuasive; Ms. Miller's claims are not moot. Since Ms. Miller's claims survive the offer of judgment, the possibility of class certification equally survives.

7

We review the denial of a motion to compel arbitration de novo. *Verbeek Props., LLC v. GreenCo Envtl., Inc.*, 159 Wn. App. 82, 86, 246 P.3d 205 (2010).

"The party seeking to avoid arbitration has the burden to show that the arbitration clause is unenforceable." *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wn.2d 598, 602-03, 293 P.3d 1197 (2013). Under the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-14, arbitration agreements are "'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 603 (quoting 9 U.S.C. § 2). Because both state and federal law favor arbitration, all presumptions are made in favor of arbitration. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004).

Whether "an arbitration agreement is unconscionable is ordinarily a decision for the court and not the arbitrator." *Brown v. MHN Gov't Servs., Inc.*, 178 Wn.2d 258, 264, 306 P.3d 948 (2013) (citing *Hartley v. Superior Court*, 196 Cal. App. 4th 1249, 1253-56, 127 Cal. Rptr. 3d 174 (2011) (holding an arbitration provision in a contract was not clear and unmistakable in providing the question of arbitrability was subject to arbitration, so the court could not compel arbitration on the threshold issue of the agreement's unconscionability). Here, the arbitrability issue has not been clearly and unmistakably delegated to the arbitrator on the face of the contract. Thus, the trial court correctly reasoned it had subject matter jurisdiction to determine the arbitration agreement's enforceability. In Washington, either substantive or procedural unconscionability is

8

sufficient to void a contract, and if either, our analysis is done. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 347, 103 P.3d 773 (2004).

"The procedural element concerns the manner in which the contract was negotiated, focusing on oppression or surprise." *Brown*, 178 Wn.2d at 266. "Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995) (internal quotation marks omitted) (citations omitted).

Here, an attorney-client relationship was formed. The rules of professional conduct, thus, apply. Under RPC 1.5(a)(9), a client must receive "a reasonable and fair disclosure of material elements of the fee agreement." And, under Rule 1.4(b), a "lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Arbitration agreements are solely permissible between attorney and client "if the client has been given 'sufficient information to permit her to make an informed decision about whether to agree to the inclusion of the arbitration provision in the retainer agreement.'" *Smith v. Jem Group, Inc.*, 737 F.3d 636, 641 (9th Cir. Wash. 2013) (quoting ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 02-425 (2002)).

9

The trial court aptly noted, "'My belief is that a lawyer who creates a relationship with a client is bound by the Rules of Professional Conduct. One of the things that a lawyer is ethically required to do is to advise the client when the client is entering into an agreement that may limit his or her legal rights. This is such an agreement.'" Report of Proceedings at 35. As stated by the Supreme Court, "We prefer that attorneys avoid running afoul of the rules of professional conduct." *In re Disciplinary Proceeding Against Marshall*, 160 Wn.2d 317, 331, 157 P.3d 859 (2007).

Here, no attorney or attorney's representative discussed the arbitration provisions with Ms. Miller, or advised her of the rights at stake. She was not counseled or advised regarding the consequences of relinquishing the legal protections provided by Washington law or of the protections provided by Texas law. Ms. Miller was not informed of the advantages or disadvantages of arbitration, including the requirement she must bring arbitration claims in Texas. Moreover, no one explained the inconsistent and mutually exclusive venue and jurisdiction provisions. Based on existing case law and the RPCs, we, like the trial court, conclude the agreement between the parties was procedurally unconscionable. Therefore, it was void and we need not address substantive unconscionability. *Adler*, 153 Wn.2d at 347.

Even so, we note an agreement is substantively unconscionable when it is one-sided, overly harsh, shocks the conscience, or is exceedingly calloused. *Gandee*, 176 Wn.2d at 603 (internal citations omitted). "Severance is the usual remedy for substantively unconscionable terms, but where such terms 'pervade' an arbitration

10

agreement, we "'refuse to sever those provisions and declare the entire agreement void.'" *Id.* (quoting *Adler*, 153 Wn.2d at 358). Here, the arbitration clause was substantively questionable with regard to the harsh choice of law and choice of venue provisions. Contracts to assist individuals with financial setbacks should not include a dispute resolution provision that is prohibitively expensive and one-sided. *See Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 465, 45 P.3d 594 (2002). While these provisions possibly could be severed from the remaining agreement, this does not cure the procedural deficiencies.

In sum, we hold the trial court did not err in finding the arbitration agreement unconscionable and, thus, did not err in denying LWG's motion to compel arbitration.

### B. Personal Jurisdiction

The issue is whether the trial court erred by denying LWG's motion to dismiss for lack of personal jurisdiction. LWG contends the court could not exercise jurisdiction over it because LWG did not have minimum contacts within Washington.

A defendant may move, prior to trial, to dismiss the complaint for lack of personal jurisdiction. A trial court's ruling on personal jurisdiction is a question of law we review de novo when the underlying facts are undisputed. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992). If the trial court's ruling is based on affidavits, like here, "'only a prima facie showing of jurisdiction is required.'" *Precision Lab. Plastics, Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 725, 981 P.2d 454 (1999) (quoting *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627

11

(1991)). The rationale is that "[a]ny greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavits and supporting materials." *Data Disc, Inc. v. Sys. Tech. Assoc. Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). Therefore, if the plaintiff's proof is limited to written materials, the materials must at least demonstrate facts supporting a finding of jurisdiction in order to avoid a motion to dismiss.

General jurisdiction exists if a nonresident defendant is transacting substantial and continuous business of such character as to give rise to a legal obligation, regardless of whether the cause of action is related to the defendant's contacts with Washington. *MBM Fisheries*, 60 Wn. App. at 418. The plaintiff must show a defendant's activities constitute doing business in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417-18, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

"'[D]oing business' in this state, [means] transacting substantial and continuous business of such character as to give rise to a legal obligation." *MBM Fisheries*, 60 Wn. App. at 418 (quoting *Crose v. Volkswagenwerk Aktiengesellschaft*, 88 Wn.2d 50, 54, 558 P.2d 764 (1977). "Purposeful availment may be established by a nonresident defendant's act of doing business in Washington," by "'the initiation of a transaction outside the state in contemplation that some phase of it will take place in the forum state.'" *CTVC of HI., Co. v. Shinawatra*, 82 Wn. App. 699, 711, 919 P.2d 1243 (1996)

12

(quoting *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 684, 430 P.2d 600 (1967)). Significantly, a "nonresident defendant may also purposefully act in Washington even though the defendant did not initiate contact with Washington 'if a business relationship subsequently arises.'" *Id.* (quoting *Sorb Oil Corp. v. Batalla Corp.*, 32 Wn. App. 296, 299, 647 P.2d 514 (1982).

Ms. Miller detailed in affidavits and supporting documents that LWG had regularly conducted business in Washington by soliciting business from Washington residents, entering into contracts with Washington consumers, and extracting money from Washington consumers. This sufficiently establishes a prima facie showing of jurisdiction to avoid a motion to dismiss. *Data Disc, Inc.*, 557 F.2d at 1285.

LWG argues all key contacts, except for the signing of the contracts, occurred in Texas, thus, jurisdiction should be in Texas. For factual support, it relies on its own Client Services Agreement reciting all services occur entirely within the State of Texas. But, Ms. Miller received and sent contracts, information, correspondence, and money from Washington. Nevertheless, "[a] nonresident defendant may also purposefully act in Washington even though the defendant did not initiate contact with Washington 'if a business relationship subsequently arises.'" *CTVC*, 82 Wn. App. at 711 (quoting *Sorb Oil Corp.*, 32 Wn. App. at 299). Therefore, we conclude Ms. Miller provides prima facie proof of general jurisdiction. Even assuming she did not, specific personal jurisdiction exists under the long-arm statute.

13

No. 31399-9-III
*Gorden v. Lloyd Ward & Assocs.*

A Washington court may exercise specific personal jurisdiction over a nonresident defendant when the defendant's limited contacts give rise to the cause of action. RCW 4.28.185; *MBM Fisheries*, 60 Wn. App. at 422-23. Washington's long-arm statute partly provides:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
>> (a) The transaction of any business within this state;
>> (b) The commission of a tortious act within this state.

RCW 4.28.185. To satisfy due process requirements, a Washington court may exercise specific personal jurisdiction over a foreign entity solely when, in addition to the requisites of the long-arm statute, the following elements are satisfied:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*CTVC*, 82 Wn. App. at 709-10 (quoting *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 767, 783 P.2d 78 (1989)).

14

The quality and nature of a defendant's activities determine whether the contact is sufficient, not the "'number of acts or mechanical standards.'" *Freestone Capital Partners LP v. MKA Real Estate Opportunity Fund I, LLC*, 155 Wn. App. 643, 653, 230 P.3d 625 (2010) (quoting *Perry v. Hamilton*, 51 Wn. App. 936, 940, 756 P.2d 150 (1988)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). A defendant cannot shield employees from liability if jurisdiction is supported by the long-arm statute of the forum state. *Brink v. First Credit Res.*, 57 F. Supp. 2d 848, 858-59 (D. Ariz. 1999) (citing *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)).

In sum, LWG purposely advertised on the Internet to Washington residents, made service promises to Washington residents, entered into contracts with Washington residents, and received payments from Washington residents. Ms. Miller's suit relates to these activities. Having Washington as the forum state does not offend traditional notions of fair play and substantial justice, considering the type of the complaint, the convenience of the parties, and the equities involved. Based on the above, Ms. Miller met her burden to show that Washington had personal jurisdiction over LWG to avoid dismissal. The trial court properly concluded likewise.

15

No. 31399-9-III
*Gorden v. Lloyd Ward & Assocs.*

Affirmed.

WE CONCUR:

Brown, J.

Korsmo, J.

Sperline, J.P.T.

16