

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STEVEN P. KOZOL, LARRY
BALLESTEROS, KEITH CRAIG,
and KEITH BLAIR,

             Appellants,

      v.

JPAY, INC.,

             Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 76796-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: December 18, 2017

TRICKEY, A.C.J. — Steven Kozol, Larry Ballesteros, Keith Craig, and Keith Blair[1] appeal the trial court's grant of summary judgment in favor of JPay, Inc. and denial of their motion for a CR 56(f) continuance, motion to compel discovery, and motion for reconsideration. Finding no error, we affirm.

## FACTS

Kozol, Ballesteros, Craig, and Blair are housed at the Stafford Creek Corrections Center in Aberdeen, Washington.[2] JPay has a contract with the Washington State Department of Corrections (DOC) to sell electronics, including

---

[1] Two sets of opening and reply briefs were filed by the appellants in this case. Appellants Ballesteros, Craig, and Blair filed one set of briefs and appellant Kozol filed a separate set. The two sets of briefs contain identical issue statements and incorporate one another's argument sections by reference. For purposes of this opinion, the appellants will be treated as a group and will be collectively called Kozol for actions on appeal.

[2] Michas Taitano participated in the trial proceedings but was not named as a party on appeal.

MP3 music players, and electronic music to inmates. Kozol, Ballesteros, Craig, and Blair each received a JP3 model MP3 music player from JPay in 2012, and have purchased music to listen to on their JP3s. JPay's music players are sold with a limited warranty.[3]

Kozol, Ballesteros, Craig, and Blair's JP3s stopped working in 2015. Steven Kozol filed help tickets with JPay and was told that he would need to purchase a new device. In June 2015, Steven Kozol filed a pro se complaint against JPay, alleging fraud, negligent misrepresentation, violation of the Consumer Protection Act[4] (CPA), tortious interference, trespass, conversion, and estoppel. Blair and Ballesteros joined Steven Kozol's lawsuit as intervenors. Craig filed a separate complaint, and Kozol's subsequent motion to consolidate the cases was granted.

In July 2015, JPay determined that its new software, which was designed for its new JP4 model music player, was causing many JP3s to malfunction when it was downloaded. JPay offered a free hardware upgrade to any inmate whose JP3 was affected, including Kozol, Ballesteros, Craig, and Blair, regardless of its warranty status. JPay has since stopped producing JP3 models but continues to offer free upgrades to new models. Inmates' music libraries are associated with their JPay account and were unaffected by the issues with the music players.

Kozol, Ballesteros, Craig, and Blair moved for a CR 56(f) continuance and moved to compel discovery. The trial court denied their motions. JPay moved for

---

[3] Although the parties do not cite a copy of the applicable user agreements in the record, JPay has never offered a limited warranty longer than one year during the relevant time period.
[4] Ch. 19.86 RCW.

summary judgment. The trial court granted summary judgment in favor of JPay and dismissed Kozol, Ballesteros, Craig, and Blair's claims. Kozol, Ballesteros, Craig, and Blair moved for reconsideration, which the trial court denied.

Kozol, Ballesteros, Craig, and Blair appeal.

## ANALYSIS

### Evidence Supporting Summary Judgment

Kozol argues that the trial court erred when it admitted the declaration of JPay's compliance officer Shari Katz because Katz's declaration does not demonstrate that it was based on her personal knowledge. We disagree.

Affidavits submitted in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." CR 56(e).

"The de novo standard of review is used by an appellate court when reviewing all trial court rulings made in conjunction with a summary judgment motion." Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998).

Here, Katz declared under penalty of perjury that she had personal knowledge of the facts contained in her declaration. Katz's declaration contains facts that would be particularly within the personal knowledge of an officer of JPay, such as the number of affected JP3s, the cause of the malfunctions, and JPay's efforts to respond to the issue. Thus, Katz's declaration indicates that she testified from her personal knowledge. Kozol has not argued that the facts in Katz's declaration were inadmissible or that Katz was not competent to testify. Therefore,

3

we conclude that the trial court did not err when it considered Katz's declaration when deciding to grant JPay's motion for summary judgment.

Kozol argues that Katz's declaration is overly generalized, conclusory, and speculative.[5] Kozol has not offered relevant legal authority in support of this argument. Moreover, Katz did not need to declare that every JP3 had been affected to provide sufficiently specific testimony. We reject this argument. RAP 10.3(a)(6).

Kozol next argues that Katz's declaration did not establish her personal knowledge because she did not declare that she worked at JPay when the events at issue occurred or that she had first-hand knowledge of the writing of the defective computer code. Kozol asserts that we must view this in the light most favorable to them and conclude that Katz started working at JPay on the day she made her declaration. This is incorrect. As discussed above, Kozol has not demonstrated that the trial court erred in concluding that Katz's declaration established her personal knowledge and was admissible. Moreover, Katz did not have to have personal knowledge of the software code itself to have personal knowledge of its effects on inmates' JP3s. We reject this argument.

### Summary Judgment

Kozol argues that the trial court erred in granting summary judgment in favor of JPay because genuine issues of material fact exist regarding their claims for violation of the CPA, conversion, and trespass to chattels. JPay relies on the facts

---

[5] For example, Kozol takes issue with Katz's statements that "many JP3 players" were affected and that the software caused "malfunctions for some offenders." Clerk's Papers (CP) at 86.

4

and arguments it offered to the trial court. We examine each of Kozol's dismissed claims in turn.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "[W]here, though evidentiary facts are not in dispute, different inferences may be drawn therefrom as to ultimate facts such as intent, knowledge, good faith, [and] negligence," summary judgment is inappropriate. Preston v. Duncan, 55 Wn.2d 678, 681-82, 349 P.2d 605 (1960).

A trial court's summary judgment ruling is reviewed de novo. Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011).

*Consumer Protection Act*

Kozol argues that the trial court erred in granting summary judgment on their claim of violation of the CPA because there is a genuine issue of material fact regarding whether JPay acted unfairly or deceptively. Because the record does not show that there is a genuine issue of material fact over whether it acted unfairly or deceptively under the CPA, we disagree.

"[T]o prevail in a private CPA action . . . a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or

5

property; (5) causation." <u>Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.</u>, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

A plaintiff may demonstrate an unfair act or practice based on violation of a statute or an act or practice that has either the "'capacity to deceive substantial portions of the public'" or is "'in violation of public interest.'" <u>Mellon v. Reg'l Tr. Servs. Corp.</u>, 182 Wn. App. 476, 488, 334 P.3d 1120 (2014) (quoting <u>Klem v. Wash. Mut. Bank</u>, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013)). A defendant's actions may be unfair or deceptive if they cause or are likely to cause substantial injury to consumers that is not reasonably avoidable and not outweighed by countervailing benefits. <u>Mellon</u>, 182 Wn. App. at 489-90.

Although the CPA is construed liberally, it does not "prohibit acts or practices which are reasonable in relation to the development and preservation of business." RCW 19.86.920.

Here, Kozol argues that the record demonstrates that JPay may have intentionally caused their JP3s to malfunction, misrepresented that it could not "unlock" their JP3s or offer replacements, and violated RCW 19.190.030(2).[6] We disagree. JPay has acknowledged that its new update, designed for JP4 models, was not compatible with JP3s and has offered to replace malfunctioning JP3 models free of charge. These both weigh against the conclusion that JPay

---

[6] "It is a violation of the consumer protection act, chapter 19.86 RCW, to assist in the transmission of a commercial electronic mail message, when the person providing the assistance knows, or consciously avoids knowing, that the initiator of the commercial electronic mail message is engaged, or intends to engage, in any act or practice that violates the consumer protection act." RCW 19.190.030(2).

intentionally caused Kozol's JP3s to malfunction, and Kozol has not offered countervailing evidence.

Kozol's claim that JPay misrepresented that it was unable to unlock or replace JP3s is also unsupported. JPay informed Steven Kozol that JPay no longer produced JP3s or offered support services because it had developed new generations of devices. The fact that JPay eventually refurbished five older JP3s in response to Kozol's lawsuit and offered them free of charge to Kozol, after it offered them a free upgrade to newer devices, does not establish that JPay acted unfairly or deceptively. Moreover, Kozol has not cited to relevant opposing evidence in the record.[7]

Similarly, JPay did not act unfairly or deceptively when it told Kozol that their only option was to purchase a new device because the limited warranties on their JP3s had expired by 2015. JPay did not have a duty to repair or replace any JP3 that stopped working after its limited warranty expired, and thus did not act unfairly or deceptively when it informed Kozol that they could purchase a newer device to replace their malfunctioning JP3s.

Further, the record does not support Kozol's assertion that JPay or its employees violated RCW 19.190.030(2). Kozol's arguments rely on their assertions that JPay was capable of repairing or replacing their malfunctioning

---

[7] Kozol cites to the declaration of Ronnie Bowman to argue that JPay was capable of unlocking JP3s, but ignores that Bowman declared that JPay was capable of doing so "[d]uring the time that JPay sold only its JP3 model music players." This was no longer the case in 2015 because JPay had discontinued its production of JP3s. Further, Kozol's argument that released inmates were given the option of having their JP3s unlocked with their existing music intact is unpersuasive because the cited evidence concerns JP4 mini-tablets, not JP3s.

JP3s. As discussed above, Kozol's arguments are insufficient to demonstrate an unfair or deceptive act or practice under the CPA. Thus, Kozol has not shown that JPay or its employees may have violated RCW 19.190.030(2).

Kozol also argues that JPay's user agreement was substantively unconscionable because it "permits [JPay] to do anything it desires to [Kozol's] music players or music purchases,"[8] and thus the trial court erred in granting summary judgment if it based its decision in any part on the user agreement.

"A term is substantively unconscionable where it is 'one-sided or overly harsh,' '[s]hocking to the conscience,' 'monstrously harsh,' or 'exceedingly calloused.'" Gandee v. LDL Freedom Enters., 176 Wn.2d 598, 603, 293 P.3d 1197 (2013) (alteration in original) (internal quotation marks omitted) (quoting Adler v. Fred Lind Manor, 153 Wn.2d 331, 344-45, 103 P.3d 773 (2004)).

Assuming that Kozol is referencing the limited warranties in JPay's user agreement, they are not substantively unconscionable. During the period the limited warranties were in place, Kozol could have taken advantage of their benefits. The fact that the warranties on the products would eventually expire does not render them unconscionable.[9]

---

[8] Opening Br. of Appellants Ballesteros, Craig, and Blair at 29.
[9] Kozol also contends that Steven Kozol did not agree to JPay's user agreement. This is irrelevant. At most, it means that Steven Kozol could not benefit from the limited warranties while they were in place.

8

*Conversion*

Kozol argues that the trial court erred in granting summary judgment in favor of JPay on their conversion claims. Because the record does not show that JPay willfully interfered with Kozol's JP3s, we disagree.

The tort of conversion is "the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." Meyers Way Dev. Ltd. P'ship v. Univ. Savings Bank, 80 Wn. App. 655, 674-75, 910 P.2d 1308 (1996). "Wrongful intent is not a necessary element of conversion, and good faith cannot be shown as a defense to conversion." Paris Am. Corp. v. McCausland, 52 Wn. App. 434, 443, 759 P.2d 1210 (1988).

Here, Katz's declaration demonstrates that JPay did not intend for their new software to impact JP3s. Kozol has not cited evidence in the record contravening the facts offered by Katz's declaration. Thus, we conclude that the record does not show a genuine issue of material fact regarding whether JPay willfully interfered with Kozol's JP3s. We need not reach the issue of whether Kozol was injured by the alleged conversion.

Kozol argues that JPay intended that the new software would be installed in JP3s when they were plugged into JPay kiosks. This does not establish that JPay also intended that the new software would interfere with JP3s. We reject this argument.

Kozol argues that JPay committed a continuing conversion of Kozol's JP3s when it wrongfully refused to unlock or otherwise return their affected JP3s. Because, as discussed above, the record does not show that JPay willfully

interfered with Kozol's JP3s and in fact offered them refurbished JP3s or a free upgrade to a newer model in a timely manner, we reject this argument.

*Trespass to Chattels*

Kozol argues that the trial court erred in granting summary judgment in favor of JPay on their trespass to chattels claims. Because the record does not demonstrate that a genuine issue of material fact exists regarding whether JPay intentionally interfered with Kozol's JP3s, we disagree.

"A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another." RESTATEMENT (SECOND) OF TORTS § 217 (AM. LAW INST. 1965); see also 16 WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 14:15, at 585 (4th ed. 2013); Repin v. State, 198 Wn. App. 243, 268-69, 392 P.3d 1174 (recognizing trespass to chattels cause of action), review denied, 188 Wn.2d 1023 (2017).

Here, as discussed above, the record does not demonstrate that a genuine issue of material fact exists regarding whether JPay intentionally interfered with Kozol's JP3s. Kozol again argues that JPay intended that inmates would download the new software, but this is insufficient to show that JPay intended to dispossess someone of a chattel or otherwise interfere with its use. Thus, we conclude that the trial court did not err when it granted summary judgment in favor of JPay on Kozol's trespass to chattels claims. We need not reach the issue of whether Kozol was harmed by the alleged trespass.

## Declaratory Judgment

Kozol argues that the trial court abused its discretion when it declined to issue a declaratory judgment ordering the return of funds they had spent on downloaded music that exceeded the amount charged by iTunes based on the language of JPay's contract with the DOC.[10] We disagree.

A person who's rights are affected by a contract may "have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder." RCW 7.24.020.

To have standing under the Uniform Declaratory Judgments Act[11] (UDJA), a party must meet the following elements:

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

Benton County v. Zink, 191 Wn. App. 269, 278, 361 P.3d 801 (2015) (alteration in original) (internal quotation marks omitted) (quoting To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001)), review denied, 185 Wn.2d 1021 (2016).

---

[10] In its oral ruling, the trial court stated that "the court is finding that this is not an appropriate case for a declaratory judgment." Report of Proceedings (RP) at 45. Although the court did not change the defense's proposed order granting summary judgment, we assume that the trial court intended to decline to issue a declaratory judgment rather than dismiss a request for a declaratory judgment on summary judgment.

[11] Ch. 7.24 RCW.

11

A trial court's decision to consider or refuse to consider a motion for declaratory judgment is reviewed for abuse of discretion. Nollette v. Christianson, 115 Wn.2d 594, 599, 800 P.2d 359 (1990).[12]

Here, Kozol has not established that an actual dispute or the mature seeds of one presently exists. JPay's contract with the DOC provides that, "Digital media purchases are comparable to cost from major providers such as iTunes."[13] The contract also states that, "The cost per song ranges between $0.99 and $2.00 depending on the label and song."[14] Kozol contends that, under the contract language giving a range of possible prices, JPay would be able to charge $1.99 for a song that is being sold for $0.79 on iTunes, thus violating the language requiring comparable pricing. This offered hypothetical is insufficient to demonstrate that an actual dispute presently exists or that one is imminent.[15] Thus, Kozol has not demonstrated that they have standing under the UDJA to request a declaratory judgment.

---

[12] Kozol argues that they have standing to sue under the contract between JPay and the DOC as third party beneficiaries. See Branson v. Port of Seattle, 152 Wn.2d 862, 877, 101 P.3d 67 (2004) ("the UDJA allows for an interested person to have any question arising under the validity of a contract determined, so long as the UDJA's underlying requirements are met"). JPay has not offered opposing argument. We assume without deciding that Kozol is a third party beneficiary with standing to sue to enforce rights under the contract between JPay and the DOC.

[13] CP at 309.

[14] CP at 310.

[15] Kozol relies on an internet article Steven Kozol attached to his declaration, which stated that a 2014 investigation discovered that "JPay's songs can cost 30% to 50% more than they would on iTunes." CP at 185. Assuming that this article is properly before us, it is insufficient to demonstrate that an actual and present dispute exists in the present case. The parties have not cited to evidence in the record that JPay has continued to use the same pricing practices for its songs, and the article does not provide information on the prices of downloadable music on other platforms. Thus, Kozol has not demonstrated that the article's statements are applicable to the present case and show that an actual and present dispute exists.

Because Kozol cannot establish standing under the UDJA, we conclude that the trial court did not abuse its discretion by declining to issue a declaratory judgment in their favor. We need not reach the issue of whether Kozol has established the other elements of standing under the UDJA.

### Motion for CR 56(f) Continuance

Kozol argues that the trial court erred when it denied their motion for a continuance under CR 56(f). Because Kozol did not state why they did not offer good reason for their delay in obtaining the evidence at issue, we disagree.

A court may grant a continuance or stay a motion for summary judgment "[s]hould it appear from the affidavits of a party opposing the motion that . . . the party cannot present by affidavit facts essential to justify the party's opposition . . . to permit affidavits to be obtained or depositions to be taken or discovery to be had." CR 56(f). But a court may deny the motion if "(1) the moving party does not offer a good reason for the delay in obtaining the evidence; (2) the moving party does not state what evidence would be established through the additional discovery; or (3) the evidence sought will not raise a genuine issue of fact." Coggle v. Snow, 56 Wn. App. 499, 507, 784 P.2d 554 (1990).

A trial court's decision to deny a motion for a CR 56(f) continuance is reviewed for abuse of discretion. Lake Chelan Shores Homeowners Ass'n v. St. Paul Fire & Marine Ins. Co., 176 Wn. App. 168, 183, 313 P.3d 408 (2013). A court abuses its discretion if its decision is based on unreasonable or untenable grounds. Clarke v. Office of Att'y Gen., 133 Wn. App. 767, 777, 138 P.3d 144 (2006).

Here, Kozol argues that they needed to conduct additional discovery to determine whether JPay had intentionally interfered with their JP3s by sending a computer command to their JP3s to lock them. In their motion for a continuance, Kozol stated that they required a continuance in order to obtain their "requested document productions" and that a continuance was the only way to obtain evidence possessed exclusively by JPay.[16] But they did not state good reason for why they could not have requested this evidence prior to summary judgment. The fact that the evidence was exclusively held by JPay is insufficient to require the trial court to grant a CR 56(f) continuance.[17] Thus, we conclude that the trial court did not abuse its discretion when it denied Kozol's motion for a CR 56(f) continuance.

### Motion to Compel Discovery

Kozol argues that the trial court abused its discretion when it denied their motion to compel discovery because the trial court should have issued a protective order to protect any trade secret information. Because Kozol's requests for discovery were overbroad and sought privileged information, we disagree.

A party may obtain discovery through various tools, including depositions. CR 26(a). But a court may limit a party's use of discovery tools if it determines that:

(A) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less

---

[16] CP at 125-26.
[17] Further, Kozol's motion to continue is premised on giving them an opportunity to obtain the same information they sought in their motion to compel discovery. As discussed below, the trial court denied Kozol's motion to compel discovery in part because the information they sought was privileged.

burdensome, or less expensive; (B) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (C) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

CR 26(b)(1).

A party may object to a discovery request if it is overbroad, vague, or ambiguous, such as when the request is so broad that it may be reasonably interpreted to include irrelevant or undiscoverable information. See Weber v. Biddle, 72 Wn.2d 22, 29, 431 P.2d 705 (1967).

(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process that:
(a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
(b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

RCW 19.108.010(4).

A trial court's decision to deny a motion to compel is reviewed for abuse of discretion. Lake Chelan Shores Homeowners Ass'n, 176 Wn. App. at 183. A court abuses its discretion if its decision is based on unreasonable or untenable grounds. Clarke, 133 Wn. App. at 777.

Here, the trial court denied Kozol's motion to compel discovery because it was "over-broad and is . . . a fishing expedition for things at this point I do not see are likely to lead to the discovery of admissible evidence and also seeks trade

15

secret information."[18] Kozol has not demonstrated that this determination was an abuse of discretion. Kozol's motion to compel discovery sought computer data and commands that would allegedly show that JPay intentionally interfered with Kozol's JP3s.[19] Kozol's requests could include computer data and information that is not relevant to the present dispute. Moreover, it is not unreasonable to conclude that proprietary computer code data involving specific command functions of electronic devices would have potential independent economic value from being kept secret. Thus, we conclude that the trial court did not abuse its discretion when it denied Kozol's motion to compel discovery.

### Motion for Reconsideration

Kozol argues that the trial court erred in denying their motion for reconsideration because they offered new material evidence. Because Kozol has not demonstrated that their offered evidence was material or could not have been offered at summary judgment, we disagree.

A trial court may vacate its decision and grant reconsideration upon the motion of an aggrieved part who offers "[n]ewly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial." CR 59(a)(4). "If the evidence

---

[18] RP at 16.

[19] Kozol also sought to depose JPay's software development engineers under CR 30. An out-of-state deponent may only be deposed "in the county where the person is served with a subpoena, or within 40 miles from the place of service, or at such other convenient place as is fixed by an order of the court." CR 45(e)(2). Kozol argues that JPay's argument that sending its employees to Washington for depositions would be an undue burden is inaccurate and that CR 30 and CR 43 require their attendance. This is unpersuasive. Kozol does not have a right to call out-of-state witnesses to Washington to provide deposition testimony, and their arguments are not relevant to the trial court's determination that their discovery requests were overbroad. We reject this argument.

was available but not offered until after [an earlier opportunity to present it] passes, the parties are not entitled to another opportunity to submit that evidence." Wagner Dev. Inc. v. Fid. & Deposit Co. of Md., 95 Wn. App. 896, 907, 977 P.2d 639 (1999).

"Motions for reconsideration are addressed to the sound discretion of the trial court; a reviewing court will not reverse a trial court's ruling absent a showing of manifest abuse of that discretion." Wagner Dev. Inc., 95 Wn. App. at 906.[20]

Kozol has not demonstrated that several of the cited items of evidence are material to the present dispute. First, Kozol argues that he was unable to submit several declarations of other inmates whose JP3s had malfunctioned because the DOC had seized Steven Kozol's legal files and the declarations were missing when his files were returned. Kozol has not established that additional evidence of affected JP3s would be material to the present case.

Second, Kozol argues that minutes from an Offender Tier Rep Meeting and a letter to Steven Kozol were not available in time for them to be submitted at summary judgment. The minutes do not include a reference to JP3s and the letter appears to contain a picture of an album cover. Kozol has not demonstrated that either are material to the present dispute.

Third, Kozol argues that the declaration of Ansel Hofstetter was not taken at the time of summary judgment and thus is new evidence. Hofstetter's declaration states that he experienced software issues with his JP4 media player

---

[20] Kozol argues that the trial court's denial of their motion to reconsider was part of its decision to dismiss their claims at summary judgment, and thus our review is de novo. This is incorrect. The trial court's denial of Kozol's motion to reconsider is a separate decision that we review for abuse of discretion. See Wagner Dev. Inc., 95 Wn. App. at 906.

when JPay released its new JP5-mini device, and that several other inmates experienced similar issues. Hofstetter's declaration does not concern JP3 players or the present dispute, and Kozol has not demonstrated how it is otherwise material to the present case.

Kozol has not demonstrated that the remaining items of evidence were unavailable in time to be submitted for the summary judgment hearing. First, Kozol argues that the declaration of John Shefcik could not have been presented at summary judgment because it relies on a transcript of an e-mail exchange between Blair and JPay that the DOC seized and did not return to him prior to the summary judgment hearing. The e-mail exchange between Blair and JPay occurred on June 18, 2015. Steven Kozol declared that his legal materials were seized on January 22, 2016. Kozol has not demonstrated that they were unable to provide Shefcik with the e-mail exchange in the months between when the exchange occurred and Steven Kozol's legal materials were seized.

Second, Kozol argues that, following summary judgment, each appellant presented new evidence of emotional distress, and that Ballesteros was formally diagnosed with posttraumatic stress disorder that he had been suffering from for decades. Kozol has not argued why they could not have discovered this evidence with reasonable diligence prior to summary judgment. For example, each of Kozol's cited declarations state that their claimed stress and anxiety began when they were locked out of their JP3s in May 2015. This evidence was available to Kozol in time for them to have offered it at the summary judgment hearing in February 2016.

18

In sum, Kozol has not demonstrated that the new evidence offered in their motion for reconsideration was material to the present case or was unavailable to them at the time of the summary judgment hearing. Therefore, we conclude that the trial court did not abuse its discretion when it denied Kozol's motion for reconsideration.

### Attorney Fees on Appeal

Kozol requests their reasonable costs on appeal. RAP 14.2; RAP 18.1. Because Kozol has not prevailed on their claims on appeal, we deny their request.

Affirmed.

Trickey, ACJ

WE CONCUR:

Cox, J.