## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| 3S NETWORK, INC., a California Corporation, | No. 87192-7-I |
| Appellant/Cross-Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| ZENISCO, INC., a California Corporation; SHAHROKH RIAHINEZHAD and his SPOUSE and their MARITAL COMMUNITY; SHAHROOZ TAEBI and his SPOUSE and their MARITAL COMMUNITY, | |
| Respondents/Cross-Appellants, | |
| and | |
| INDIVIDUAL JOHN and JANE DOES 1-20; and DOE ENTITIES 1-20, | |
| Defendants. | |

COBURN, J. — Shahrokh Riahinezhad and Shahrooz Taebi are former employees of telecommunications engineering company 3S Network, Inc. 3S Network sued Zenisco, Riahinezhad, and Taebi[1] for claims of fraud and tortious interference, alleging that Riahinezhad and Taebi formed competing company Zenisco, Inc. during their

---

[1] Though 3S Network brought its lawsuit against Shahrokh Riahinezhad and Shahrooz Taebi and their spouses, the relevant facts pertain to the conduct of Shahrokh Riahinezhad and Shahrooz Taebi as employees of 3S Network in furtherance of their competing company Zenisco. This opinion thus refers to Riahinezhad and Taebi in the singular for simplicity.

employment with 3S Network and conspired to steal equipment, confidential information, clients, and employees from 3S Network for Zenisco while concealing its existence.

The trial court granted Zenisco and Riahinezhad's joint motion for summary judgment on the basis that the claims against them were time-barred and granted California resident Taebi's summary judgment motion for lack of personal jurisdiction. 3S Network appeals the two orders, arguing that (1) employees Riahinezhad's and Taebi's purported destruction of evidence creates a genuine dispute as to whether the discovery rule tolls the statute of limitations period on 3S Network's fraud and tortious interference claims against Zenisco and Riahinezhad and (2) the record supports a prima facie showing of the court's specific personal jurisdiction over Taebi. Zenisco and Riahinezhad cross-appeal the trial court's order denying their request for attorney fees under RCW 4.84.185.

We agree with 3S Network that the record supports the reasonable inference that Taebi had sufficient minimum contacts with Washington related to 3S Network's claims to support the court's specific personal jurisdiction over Taebi. Therefore, we reverse the trial court's summary judgment order dismissing 3S Network's claims against Taebi. However, because 3S Network fails to show that it exercised reasonable due diligence to support the application of the discovery rule to its fraud and tortious interference claims against Zenisco and Riahinezhad, we affirm the trial court's summary judgment dismissal of 3S Network's claims against Zenisco and Riahinezhad. We also affirm the trial court's order denying attorney fees to Zenisco and Riahinezhad.

2

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

FACTS[2]

3S Network is a telecommunications engineering company principally based in California and doing business in several states, including Washington, Oregon, and California. Broadly, according to its complaint below, 3S Network sets up cell towers.

While working for 3S Network as managers, Riahinezhad and California resident Taebi[3] formed competing company Zenisco, a California corporation with its principal place of business in Washington. Both Riahinezhad and Taebi directly managed some of 3S Network's largest clients, including SAC Wireless, Bechtel, and Verizon. Taebi was the main point of contact between 3S Network and Bechtel for work that was completed in California, as well as the main point of contact for SAC Wireless for work that was completed in Washington and Oregon.

While working for 3S Network, Riahinezhad and Taebi used 3S Network equipment and materials to start Zenisco. Also during their employment at 3S Network, Riahinezhad and Taebi shared 3S Network's confidential information and conspired to

---

[2] Some facts are based on information in 3S Network's complaint that respondents Zenisco and Riahinezhad assumed true for the sake of their summary judgment motion or are allegations that this court must treat as established regarding the issue of the trial court's personal jurisdiction over respondent Taebi. See Duell v. Alaska Airlines, Inc., 26 Wn. App. 2d 890, 896, 530 P.3d 1015 (2023); Downing v. Losvar, 21 Wn. App. 2d 635, 652, 507 P.3d 894 (2022). This recitation of the relevant facts is also provided in consideration of the rule that we must take a nonmoving party's declaration as true on summary judgment. Bittner v. Symetra Nat'l Life Ins. Co., 32 Wn. App. 2d 647, 664, 558 P.3d 177 (2024).

[3] The record supports that Riahinezhad is the sole owner of Zenisco. Taebi was a previous part-owner of Zenisco and, during the time period relevant to 3S Network's complaint, was an employee of Zenisco.

steal its employees and clients for Zenisco, including by talking disparagingly about 3S Network to its clients.

Sometime between January and August 2016, 3S Network invoiced its client SAC Wireless for work done in Washington and Oregon. Riahinezhad and Taebi induced SAC Wireless to not pay the invoice in violation of SAC Wireless' contractual duties to 3S Network. 3S Network incurred a loss of more than $600,000 and terminated its contract with SAC Wireless.

In August 3S Network, through one of its clients, became aware of the existence and Riahinezhad's operation of Zenisco. Following an internal investigation, 3S Network terminated Riahinezhad's employment on August 12. Sometime that same month, Riahinezhad attempted to delete information from computers and devices belonging to 3S Network. In the week after his termination, Riahinezhad damaged a 3S Network laptop to prevent 3S Network from retrieving Zenisco-related emails and did not return tools and other equipment to 3S Network.

3S Network confronted Taebi about its findings from its internal investigation and his involvement with Zenisco around September 23. At that time 3S Network believed that Taebi shared proprietary and confidential client contact information with Riahinezhad to solicit 3S Network's largest clients. Taebi quit the same day and began working for Zenisco.

According to 3S Network's president and chief executive officer (CEO) Saeid Danesh, "3S [Network] worked diligently to recover data on emails and texts from equipment left behind by Riahinezhad and Taeibi [sic]." Specifically, Danesh referred to text message conversations between Riahinezhad and Taebi that occurred during

4

Zenisco's formation showing that "they were conspiring to take clients of 3S."[4] The text messages included discussions related to SAC Wireless and Verizon. One of the text message exchanges refers to reports from "Oziel," a former 3S Network employee currently working for Verizon, that Riahinezhad and Taibi "are damaging 3S' reputation in order to get the job and do it themselves. … [and] intentionally … damaging the project to replace 3S [perhaps with Zenisco]." (Second alteration in original.) The record does not indicate that 3S Network reached out to Oziel after discovering the text message.

Colby Lyday worked for Zenisco after he worked for 3S Network. 3S Network "learned most of the details" about the respondents' alleged fraudulent and tortious conduct in 2019 when Lyday shared his experience working with Zenisco.

In or around June 2016 3S Network moved Lyday from Portland, Oregon to the Seattle area. Around this time, while Lyday worked for 3S Network in Washington, Riahinezhad recruited Lyday to perform "some side work" for Zenisco, "his friend's company in California." (Internal quotation marks omitted.) Lyday found out later that this "friend" was Taebi. Lyday accepted work with Zenisco because summer work for 3S Network was slow at that time. While working on jobs in California, Lyday found it odd that Zenisco's work crews used tools that were marked with "3SN." (Internal quotation marks omitted.) Lyday "learned later" that "[i]t was a scam" and Taebi was subcontracting 3S Network's work to his company Zenisco.

Lyday left 3S Network later in 2016. Around August or September Riahinezhad told Lyday that his friend who owned Zenisco wanted to hire him. Though Lyday had

---

[4] Some of the text message exchanges were in Farsi, which was translated to English.

previously spoken by phone with Taebi, the first time he met Taebi in person was in Spokane, Washington in fall 2016. Taebi and Riahinezhad hired Lyday "to help run Zenisco." Lyday worked for Zenisco in Spokane from September 2016 until around February 2017. During that time Taebi performed work for SAC Wireless. After Spokane, Lyday worked in multiple states for Zenisco before eventually running operations from Zenisco's office in Salem, Oregon. Lyday left Zenisco in February 2019 after a dispute with Riahinezhad.

During his employment at Zenisco between August 2018 and February 2019, Lyday "observed numerous instances of fraud and underhanded dealings." Lyday stated that Riahinezhad changed records so that Lyday never had a clear idea of how much was being earned on different jobs.

In May 2019 3S Network sued Zenisco, Riahinezhad, and Taebi alleging claims of fraud and tortious interference. The complaint was dismissed without prejudice for insufficient service of process with respect to all defendants.

On December 31, 2019, 3S Network filed a new suit against Zenisco, Riahinezhad, and Taebi for claims of fraud and tortious interference.[5]

In support of its fraud claim, 3S Network alleged that Riahinezhad and Taebi deliberately concealed, misrepresented, and omitted material facts during their

---

[5] 3S Network also brought causes of action for breach of common law duties of loyalty, good faith, and fair dealing; misappropriation of trade secrets; civil conspiracy; conversion; unjust enrichment; violation of the federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. 1030 et seq.; violation of Washington's Consumer Protection Act (CPA), chapter 19.86 RCW; accounting; and injunctive relief. During the summary judgment proceedings, 3S Network withdrew its claims for breach of common law duties of loyalty, good faith, and fair dealing; unjust enrichment; violation of the CFAA; violation of the CPA; and accounting. The trial court dismissed on summary judgment its claims for trade secret misappropriation and conversion as time-barred, which 3S Network does not challenge on appeal.

employment at 3S Network, including their assigning 3S Network's work crews to jobs for Zenisco and using proprietary information to compete with 3S Network. As to its tortious interference claim, 3S Network alleged that Riahinezhad and Taebi intentionally used 3S Network's confidential and proprietary information to interfere with its contractual relationships and business expectancies with "customers, clients, and prospective customers [and] clients" to divert business to Zenisco.

Zenisco and Riahinezhad moved for summary judgment, arguing that 3S Network's claims were time-barred.

In response 3S Network presented an email exchange dated August 1, 2017, to show when it learned that Riahinezhad and Taibi induced its client SAC Wireless to stop paying for invoiced work in 2016. Danesh testified that 3S Network "learned that SAC Wireless was using Zenisco when we received the email," which was mis-addressed to Riahinezhad's old 3S Network email address. The email exchange is between Taebi[6] and SAC Wireless project manager Tim Boeve. Taebi's signature on the email lists his title as chief operation officer for Zenisco, with a business address in Bellevue, Washington. In his email to Boeve, Taebi asks if Zenisco could "drop" two projects "found to be around 155 and over 200 miles away from our base in Bellevue" due to unsustainable costs.

3S Network also presented an email exchange between Taebi and multiple Bechtel employees that was mis-addressed to Taebi's former 3S Network email address. Danesh testified that 3S Network did not know that Bechtel was working with Zenisco until it received this email. The email exchange begins with an email sent by

---

[6] The email is signed by "Sean Taebi." Lyday testified that Taebi "went by 'Sean' Taebi'" and "Riahinezhad was known to those who worked for him as 'Shawn Riahi.'"

7

Taebi on November 2, 2018, and ends with an email sent by Bechtel employee Israel Michael to multiple email addresses, including Taebi's former 3S Network email address, on November 10, 2018. The email states, "For Authorized Parties Who Require the Information to do Bechtel Work."

Lastly, 3S Network submitted an email dated November 30, 2016, from Verizon in Northern California stating that "it has come to my attention that 3S Network[] has failed to properly pay their subcontractors in a timely fashion for the Verizon RedRock Canyon new build project" and demanding that 3S Network pay its subcontractor Legacy General. Danesh testified that Taebi recruited Legacy General and asserted that 3S Network believes Taebi directed Legacy General to falsely complain to Verizon that 3S Network had not paid them. According to Danesh, 3S Network paid Legacy General but "could never work with Verizon in Northern California again," which cost 3S Network about $1 million per year in potential business.

The trial court granted summary judgment dismissal of 3S Network's fraud and tortious interference claims against Zenisco and Riahinezhad based on the expiration of the applicable statute of limitations period. Taebi separately moved for summary judgment for lack of personal jurisdiction, which the trial court granted. 3S Network appeals both summary judgment orders. The trial court denied Zenisco and Riahinezhad's motion for attorney fees, which Zenisco and Riahinezhad challenge on cross-appeal.

DISCUSSION

Standard of Review

We review de novo a trial court's summary judgment order of dismissal. Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). We consider the same evidence heard by the trial court and any reasonable inferences from that evidence in a light most favorable to the non-moving party. Id. Summary judgment is appropriate where the pleadings, affidavits, and depositions do not establish a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Id.; CR 56(c). A material fact is one upon which the outcome of the litigation depends. Wojcik v. Chrysler Corp., 50 Wn. App. 849, 853, 751 P.2d 854 (1988). "If reasonable minds can differ on facts controlling the outcome of the litigation, then there is a genuine issue of material fact and summary judgment is improper." Woods View II, LLC v. Kitsap County, 188 Wn. App. 1, 19, 352 P.3d 807 (2015) (citing Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008)).

The party opposing summary judgment "may not rest upon the mere allegations or denials of a pleading, but … must set forth specific facts showing that there is a genuine issue for trial." CR 56(e). Even where an issue typically requires resolution by a fact finder, we may grant summary judgment as a matter of law where reasonable minds could only reach one conclusion, thus making resolution of a question by a fact finder unnecessary. Old City Hall LLC v. Pierce County AIDS Found., 181 Wn. App. 1, 9-10, 329 P.3d 83 (2014) (citing Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 924, 296 P.3d 860 (2013)). The purpose of summary judgment is to avoid a useless trial. Haley v. Amazon.com Servs., LLC, 25 Wn. App. 2d 207, 217, 522 P.3d 80 (2022).

We may affirm a trial court's summary judgment order on any basis supported by the record. O'Dea v. City of Tacoma, 19 Wn. App. 2d 67, 79, 493 P.3d 1245 (2021).

Dismissal of Claims against Zenisco and Riahinezhad

3S Network contends that the trial court erred in dismissing its fraud and tortious interference claims as time-barred because its later discovery of the factual basis for such claims tolled the applicable statute of limitations period.

*A. Discovery Rule*

It is the defendant's burden to establish statute of limitations as an affirmative defense. Haslund v. City of Seattle, 86 Wn.2d 607, 620-21, 547 P.2d 1221 (1976). To prevail on summary judgment on statute of limitations grounds, a defendant must show an absence of fact as to when the claims accrued. Malnar v. Carlson, 128 Wn.2d 521, 530, 910 P.2d 455 (1996); Niven v. E.J. Bartells Co., 97 Wn. App. 507, 514, 983 P.2d 1193 (1999).

The statute of limitations for fraud and tortious interference is three years. RCW 4.16.080(2), (4); Crisman v. Crisman, 85 Wn. App. 15, 21 & n.2, 931 P.2d 163 (1997) (fraud); Woods View II, 188 Wn. App. at 19 (tortious interference). The statute of limitations period runs from the time an action has accrued, which is when "every element of an action is susceptible of proof, including the occurrence of actual loss or damage."[7] Woods View II, 188 Wn. App. at 20 (citing Malnar, 128 Wn.2d at 529; Haslund, 86 Wn.2d at 619); RCW 4.16.080(4).

---

[7] See Baker Boyer Nat'l Bank v. Foust, 6 Wn. App. 2d 375, 381 & n.4, 436 P.3d 382 (2018) (stating elements necessary to prove a claim of fraud); Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997) (stating elements required to prove a claim of tortious interference with a contractual relationship or business expectancy).

In cases where there is a delay between the injury and the plaintiff's discovery of it, the court may apply the discovery rule. Mayer v. City of Seattle, 102 Wn. App. 66, 76, 10 P.3d 408 (2000) (citing Crisman, 85 Wn. App. at 20); Clare v. Saberhagen Holdings, Inc., 129 Wn. App. 599, 602-03, 123 P.3d 465 (2005). "The discovery rule will postpone the running of a statute of limitations until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action." Mayer, 102 Wn. App. at 76 (emphasis added); see also Crisman, 85 Wn. App. at 20 (stating that when the delay in discovering the basis for a claim "was not caused by the plaintiff sleeping on his rights, the court may apply the discovery rule"). A cause of action will accrue on the date that the plaintiff had notice of facts that would prompt a reasonably prudent person to inquire into the presence of injury, even if actual discovery did not occur until later. Mayer, 102 Wn. App. at 76; Allen v. State, 118 Wn.2d 753, 758, 826 P.2d 200 (1992).

The discovery rule is designed to balance the policies underlying statutes of limitations against the unfairness of cutting off a valid claim where the plaintiff, due to no fault of their own, could not reasonably have discovered the facts supporting the claim until after the date of the injury. Crisman, 85 Wn. App. at 20. It is the plaintiff's burden to prove that the facts constituting the claim were not and could not have been discovered by due diligence within the applicable limitations period.[8] Clare, 129 Wn. App. at 603. It is a question of fact whether the plaintiff has exercised due diligence. Mayer, 102 Wn. App. at 76. "However, on summary judgment, where there are no genuine issues of

---

[8] "The key consideration under the discovery rule is the factual, not the legal, basis for the cause of action." Allen, 118 Wn.2d at 758. In other words, the action accrues when the plaintiff knows or should know the relevant facts, regardless of whether they also know that the facts are sufficient to establish a legal cause of action. Id.

11

material fact, the court may decide that the discovery rule does not apply." Pepper v. J.J. Welcome Const. Co., 73 Wn. App. 523, 539, 871 P.2d 601 (1994), overruled on other grounds by Phillips v. King County, 87 Wn. App. 468, 943 P.2d 306 (1997) (citing Allen, 118 Wn.2d at 760); see also Clare, 129 Wn. App. at 603-05 (holding that the trial court properly determined that there was lack of any diligence to ascertain information necessary to timely pursue claim and affirming summary judgment dismissal).

*(i) Waiver*

As a preliminary matter, Zenisco and Riahinezhad claim that 3S Network's arguments were unpreserved below and are thus waived.

Under RAP 9.12, "[o]n review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." Consequently, "[i]ssues and contentions neither raised by the parties nor considered by the trial court when ruling on a motion for summary judgment may not be considered for the first time on appeal." Cano-Garcia v. King County, 168 Wn. App. 223, 248, 277 P.3d 34 (2012). "The purpose of this limitation is to effectuate the rule that the appellate court engages in the same inquiry as the trial court." Wash. Fed'n of State Emps., Council 28, AFL-CIO v. Office of Fin. Mgmt., 121 Wn.2d 152, 157, 849 P.2d 1201 (1993). Evidence "called to the attention of the trial court" embraces more than evidence merely considered by the trial court. Mithoug v. Apollo Radio of Spokane, 128 Wn.2d 460, 462-63, 909 P.2d 291 (1996).

Zenisco and Riahinezhad argue that 3S Network failed to preserve its argument on appeal that its discovery efforts were thwarted by employees Riahinezhad's and Taebi's alleged destruction of evidence.

3S Network fails to show where it argued at summary judgment that it could not have discovered evidence to support its claims within three years of its complaint because employees Riahinezhad or Taebi destroyed information stored on 3S Network's laptops or devices. Zenisco and Riahinezhad conceded below for the purpose of summary judgment that Riahinezhad intentionally damaged a 3S Network laptop, stole tools and equipment belonging to 3S Network, and wiped computers. But 3S Network did not—in its opposition brief to the trial court or orally at the summary judgment hearing—relate these activities to an argument that it could not have learned, through the exercise of due diligence, the extent of Zenisco's and Riahinezhad's alleged unlawful activities prior to the running of the applicable statute of limitations period. Because it was not raised below for the trial court's consideration, we conclude that 3S Network waived the argument that employees Riahinezhad's and Taebi's purported destruction of evidence postponed the running of the three-year statute of limitations period on its fraud and tortious interference claims against Zenisco and Riahinezhad.

Zenisco and Riahinezhad also assert that 3S Network raises for the first time on appeal additional fraud and tortious interference claims based on their alleged conduct with 3S Network's clients SAC Wireless, Bechtel, and Verizon. The record supports that 3S Network raised the issue of respondents' alleged tortious interference with its business relationships with clients SAC Wireless and Verizon.[9] In its arguments to the trial court, 3S Network did not explicitly connect evidence of Zenisco's relationship with client Bechtel to its tortious interference claims or evidence of Zenisco's relationship with clients SAC Wireless, Bechtel, and Verizon to its fraud claims. However, because

---

[9] Zenisco and Riahinezhad do not dispute that 3S Network raised below a tortious interference claim specific to 3S Network's business relationship with Verizon.

3S Network's argument regarding the application of the discovery rule is the same as to these various fraud and tortious interference claims and does not depend on the specific client relationship allegedly affected, we exercise our discretion to address it.

*(ii)  Reasonable Due Diligence*

3S Network argues that the record establishes that it exercised due diligence by working to recover emails and text messages from Riahinezhad's and Taebi's devices to support the application of the discovery rule to its fraud and tortious interference claims against Zenisco and Riahinezhad.

> "The general rule in Washington is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm. The plaintiff is charged with what a reasonable inquiry would have discovered."

Clare, 129 Wn. App. at 603 (quoting Green v. A.P.C., 136 Wn.2d 87, 96, 960 P.2d 912 (1998)). "[T]he discovery rule requires a plaintiff to use due diligence in discovering the basis for the cause of action." Id. (citing Allen, 118 Wn.2d at 758).

Thus, in the instant case, 3S Network must present evidence that the facts constituting its fraud and tortious interference claims were not and could not have been discovered by due diligence within the three-year limitations period.

It is undisputed that the alleged conduct by Riahinezhad and Taebi done in furtherance of the fraudulently concealed competing company Zenisco came to the attention of 3S Network more than three years prior to 3S Network filing its complaint on December 31, 2019. 3S Network admitted below that it discovered employees Riahinezhad and Taebi secretly formed their own competing company Zenisco, which caused damages, around August and September 2016, thus precluding recovery on

"this alleged fraud" under the statute of limitations. 3S Network also admitted to having "knowledge of some of the tortious interference at the time of [Taebi's] termination" in September 2016.

In the weeks leading up to Taebi's termination, 3S Network believed that he shared proprietary and confidential client contact information with Riahinezhad to use to solicit 3S Network's largest clients. Further, in November 2016 3S Network received an email with Verizon's demand for 3S Network to pay subcontractor Legacy General, which was recruited by Taebi. Even though 3S Network knew that it had paid the subcontractor, it decided to pay the subcontractor again. 3S Network's knowledge of this evidence of fraudulent and tortious conduct involving and connected to Zenisco and Riahinezhad gave rise to a duty to inquire into the extent of their conduct with reasonable due diligence. See Clare, 129 Wn. App. at 604-05.

To prove that it made a diligent effort to discover the scope of fraudulent and tortious conduct, 3S Network relies on a declaration from its CEO Danesh that "3S [Network] worked diligently to recover data on emails and texts from equipment left behind by Riahinezhad and Taeibi [sic]." 3S Network's self-proclaimed "diligent" efforts to search employees Riahinezhad's and Taebi's work equipment does not establish whether 3S Network exercised a reasonable amount of due diligence to inquire into facts related to its claims against Zenisco and Riahinezhad. 3S Network asks this court to assume, without support, that all it was capable of doing to discover evidence to support its claims was to search employees Riahinezhad's and Taebi's computers and devices. Such conclusory assertions are insufficient to create a genuine issue of

material fact regarding 3S Network's exercise of reasonable due diligence. See Hamblin v. Castillo Garcia, 23 Wn. App. 2d 814, 831, 517 P.3d 1080 (2022).

By fall 2016, more than three years prior to its complaint, 3S Network was on notice of its employees Riahinezhad and Taebi's fraudulently concealed creation of Zenisco. As their employer, 3S Network was also aware of Riahinezhad's and Taebi's managerial responsibilities and access to its clients. Moreover, in 2016, SAC Wireless, for whom Taebi was the main point of contact and Riahinezhad oversaw jobs, suddenly stopped paying 3S Network for invoiced work. 3S Network provides no explanation as to why it did not affirmatively act upon this knowledge to, for example, inquire directly with clients and employees. Instead, the record supports that 3S Network passively waited for additional information to come forth in the form of mis-addressed emails and former employee Lyday's later decision to share his experience working for Zenisco. The same is true for Verizon's allegedly induced 2016 complaint to 3S Network that it did not pay subcontractor Legacy General. This subcontractor was one recruited by Taebi, yet 3S Network provided no evidence that it further inquired into the unfounded grievance and, instead, simply paid the subcontractor again.

The discovery rule is designed to protect "a valid claim where the plaintiff, due to no fault of [their] own, could not reasonably have discovered the claim's factual elements until some time after the date of the injury." Crisman, 85 Wn. App. at 20 (emphasis added). "A claimant who knows of the harm and the immediate cause of the harm, but fails to make any meaningful inquiry, has breached the due diligence duty." Clare, 129 Wn. App. at 604. Notably, during the summary judgment hearing, the trial court observed that, other than confronting employees Riahinezhad and Taebi for

16

unlawfully competing with their employer, 3S Network did nothing. The trial court observed there was no evidence that 3S Network reached out to customers to see if they had heard from defendants, that it checked with its bank to make sure it knew where the money was going, or that it conducted an inventory. Counsel for 3S Network responded to the trial court's comments on 3S Network's inaction by saying, "I can't speak to exactly the level of diligence that was carried out."

We conclude that no reasonable factfinder could find on this record that 3S Network met its burden to show it exercised due diligence to support the application of the discovery rule to its fraud and/or tortious interference claims. Accordingly, summary judgment dismissal of 3S Network's claims against Zenisco and Riahinezhad was proper.[10]

Dismissal of Claims Against Taebi

A.  *Judicial Estoppel*

As a threshold matter, Taebi contends that judicial estoppel bars 3S Network's challenge to the trial court's summary judgment order dismissing its claims against Taebi for lack of personal jurisdiction. Taebi argues that by voluntarily dismissing its challenge in its prior appeal to this court, 3S Network abandoned its argument and cannot raise it in the instant appeal following the trial court's final judgment. We disagree.

---

[10] Because we affirm the trial court's summary judgment order dismissing 3S Network's fraud and tortious interference claims against Zenisco and Riahinezhad, we need not address 3S Network's argument that reversal of the trial court's summary judgment order requires the revival of 3S Network's civil conspiracy and injunctive relief claims against Zenisco and Riahinezhad.

To put Taebi's argument in context, we first provide the relevant procedural history.[11] Following the trial court's orders granting summary judgment in favor of respondents, 3S Network sought appeal in this court in September 2020. A commissioner of this court issued a ruling directing 3S Network to address appealability of the trial court's orders. In November 2020 3S Network filed a statement of appealability, stating that the trial court's order dismissing its claims against Taebi was a final judgment appealable under RAP 2.2(a)(1).[12] 3S Network requested an extension to file its opening brief, which this court granted. In May 3S Network filed its opening brief wherein it noted that it was not challenging the trial court's dismissal of its claims against Taebi for lack of personal jurisdiction. Taebi then filed a motion "to dismiss review of the trial court's order dismissing the claims against [Taebi] for lack of personal jurisdiction" for want of prosecution. In its response, 3S Network did not oppose Taebi's motion to dismiss, stating it used the extension to file its opening brief to focus its appeal and narrow its arguments. A commissioner of this court subsequently dismissed 3S Network's appeal of the trial court's order dismissing its claims against Taebi for lack of personal jurisdiction.

Later, upon this court's commissioner's instruction to the parties to address whether all claims as to all parties had been disposed of in the trial court, 3S Network filed a memorandum stating that upon investigation, there were pending counterclaims below and agreed that the appeal was premature. 3S Network requested that this court

---

[11] This recitation of the relevant procedural history is based on documents that Taebi included in an appendix to his response brief, which 3S Network did not object to and cites in reply.

[12] RAP 2.2(a)(1) allows a party to appeal a "final judgment entered in any action or proceeding."

stay its appeal pending final judgment in the trial court and stated that it would modify its brief to address the trial court's additional rulings as necessary.

On August 11, 2021, a commissioner of this court ruled:

All parties agree that there remain unresolved claims pending in the trial court. The August 28, 2020 trial court order designated in the notice of appeal is not appealable as a matter of right. RAP 2.2(d). The notice is thus treated as one for discretionary review. 3S Network, Inc.'s motion to stay this interlocutory appeal pending a final judgment is denied. 3S Network may appeal from a final judgment, and an unsuccessful motion for discretionary review of the August 28 summary judgment ruling will not prejudice its right to challenge the ruling in that appeal.

If 3S Network seeks to pursue interlocutory review of the August 28 order before the entry of a final judgment, it shall promptly file a motion for discretionary review, not later than August 26, 2021. If the motion is not filed by then, this case will be dismissed without further notice of this Court, as abandoned.

Emphasis added.

In the instant appeal, Taebi avers that 3S Network takes inconsistent positions by seeking to revive its personal jurisdiction challenge after it agreed to its dismissal in the prior appeal while maintaining that the issue was appealable. Taebi suggests that re-litigation of the issue deprives him of "finality."

Judicial estoppel is an equitable doctrine that "'precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arp v. Riley, 192 Wn. App. 85, 91, 366 P.3d 946 (2015) (internal quotation marks omitted) (quoting Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007)). The primary aims of judicial estoppel are to preserve respect for judicial proceedings and avoid inconsistency, duplicity, and waste of time. Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 861, 281 P.3d 289 (2012). To determine whether judicial estoppel applies, a court considers whether (1) the party

19

asserts a position inconsistent with one made in an earlier proceeding, (2) acceptance of the position would create the perception that a party misled a court in either proceeding, and (3) the party asserting the inconsistent position would derive an unfair advantage or impose an unfair detriment. Arp, 192 Wn. App. at 92.

Judicial estoppel is intended to protect the integrity of the courts, not the litigants. Id. at 91. A precondition to the application of judicial estoppel is that the first court adopted the party's prior inconsistent claim or position in the prior litigation. Taylor v. Bell, 185 Wn. App. 270, 282-84, 340 P.3d 951 (2014).

There was no judicial adoption of an inconsistent position here. Regardless of whether 3S Network believed its challenge to the trial court's summary judgment dismissal of its claims against Taebi could have been decided in the prior appellate proceedings, this was at the discretionary review stage and under the particular standard warranting discretionary review that requires the trial court to have committed "obvious error" or "probable error." RAP 2.3(b)(1)-(2). Consistent with the commissioner's August 11 order, a party's failure to seek or obtain discretionary review of an interlocutory order does not waive a party's ability to challenge the order on appeal from a final judgment as a matter of right. See RAP 2.3(c). Moreover, even if the trial court's summary judgment dismissal of 3S Network's claims against Taebi had been determined to be final and appealable in the prior appeal under CR 54(b)[13] and RAP 2.2(d),[14] our Supreme Court has held that it makes no logical sense to require an

---

[13] CR 54(b) governs "Judgment Upon Multiple Claims or Involving Multiple Parties."
[14] RAP 2.2(d) provides in part that a judgment adjudicating less than all of the claims or counts, or the rights and liabilities of less than all the parties, is generally subject only to discretionary review until the entry of a final judgment adjudicating all of the claims, counts, rights, and liabilities of all the parties.

immediate appeal of partial final judgment under these rules when it might not be possible for a party to know whether review of that decision is necessary until the remaining claims are disposed of. Fox v. Sunmaster Products, Inc., 115 Wn.2d 498, 502-05, 798 P.2d 808 (1990). "Such a requirement would simply encourage multiple and perhaps unnecessary appeals in multi-party and multi-claim cases." Id. at 505.

"Because the doctrine of judicial estoppel seeks to preserve judicial integrity, '[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations' and thus poses little threat to judicial integrity.'" CHD, Inc. v. Taggart, 153 Wn. App. 94, 104, 220 P.3d 229 (2009), overruled on other grounds by Anfinson, 174 Wn.2d 851 (alteration in original) (citation omitted in original) (internal quotation marks omitted) (quoting New Hampshire v. Maine, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)). Here, a commissioner of this court granted Taebi's uncontested motion to dismiss 3S Network's nonmandatory appeal of the trial court's summary judgment order in favor of Taebi without any decision on its merits. This record thus does not present any judicial acceptance of a position that would threaten judicial integrity or unfairly advantage 3S Network in the instant appeal that followed the trial court's final judgment.

"'[Judicial estoppel] is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims ... [and] is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity.'" Miller v. Campbell, 164 Wn.2d 529, 544, 192 P.3d 352 (2008) (internal quotation marks omitted) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996)). Because Taebi does not present a viable basis for the application of judicial estoppel,

we address the merits of 3S Network's appeal of the trial court's summary judgment dismissal of its claims against Taebi for lack of personal jurisdiction.

*B. Personal Jurisdiction*

3S Network contends that it showed that California resident Taebi had sufficient minimum contacts with Washington related to his alleged tortious interference with 3S Network's client relationship with SAC Wireless and misappropriation of SAC Wireless as a client for Zenisco to support a prima facie case of specific personal jurisdiction. We agree.

We review motions to dismiss for lack of personal jurisdiction de novo. State v. LG Elecs., Inc., 186 Wn.2d 169, 176, 375 P.3d 1035 (2016). Because the trial court ruled on the motion without an evidentiary hearing, we only consider whether 3S Network made a prima facie showing of jurisdiction based on the affidavits and discovery, and not whether Taebi rebutted said showing. See id.; MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc., 60 Wn. App. 414, 418, 804 P.2d 627 (1991); Gorden v. Lloyd Ward & Associates, P.C., 180 Wn. App. 552, 565-66, 323 P.3d 1074 (2014). "[I]f the plaintiff's proof is limited to written materials, the materials must at least demonstrate facts supporting a finding of jurisdiction in order to avoid a motion to dismiss." Gorden, 180 Wn. App. at 566.

"A prima facie case relies on evidence to be weighed, but not necessarily accepted by a jury or other trier of the fact." Downing v. Losvar, 21 Wn. App. 2d 635, 652, 507 P.3d 894 (2022). Instead, we must determine whether 3S Network presented "evidence of sufficient circumstances that would support a logical and reasonable inference of the facts sought to be proved." Id. Importantly, we treat the allegations in

3S Network's complaint as true for purposes of determining jurisdiction and must view the evidence and reasonable inferences from that evidence in a light most favorable to 3S Network as the party who carries the burden of proof. Duell v. Alaska Airlines, Inc., 26 Wn. App. 2d 890, 896, 530 P.3d 1015 (2023); Downing, 21 Wn. App. 2d at 652.

Washington's long-arm jurisdiction statute provides that "[a]ny person" submits to the jurisdiction of Washington courts by conducting a "transaction of any business within this state." RCW 4.28.185(1)(a). Under the statute, a Washington court's personal jurisdiction over nonresident defendants and foreign corporations must comport with federal due process under the Fourteenth Amendment. Sandhu Farm Inc. v. A&P Fruit Growers Ltd., 25 Wn. App. 2d 577, 583, 524 P.3d 209 (2023); see Goodyear Dunlop Tires Operations, SA v. Brown, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) ("The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant.").

At issue in the instant appeal is specific personal jurisdiction. Specific personal jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Downing, 21 Wn. App. 2d at 657-58 (citing Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 262, 137 S. Ct. 1773, 198 L. Ed. 395 (2017)). A Washington court's exercise of specific personal jurisdiction over a nonresident defendant requires that the nonresident defendant has sufficient minimum contacts with our state, such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. Daniels v. Sommers, 32 Wn. App. 2d 482, 494, 556 P.3d 1113 (2024) (citing LG Elecs., 186 Wn.2d at 176-77). To determine whether there are sufficient minimum contacts for specific personal

jurisdiction, Washington courts use the two-prong <u>Ford</u> test. <u>Duell</u>, 26 Wn. App. 2d at 899 (citing <u>Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.</u>, 592 U.S. 351, 352, 141 S. Ct. 1017, 209 L. Ed. 2d 225 (2021)). Under the <u>Ford</u> test, "(1) the defendant must purposefully avail itself of the privilege of conducting activities within the forum state and (2) the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum." <u>Duell</u>, 26 Wn. App. 2d at 899; <u>see</u> <u>Ford</u>, 592 U.S. at 359. A plaintiff has the burden of satisfying both prongs. <u>Downing</u>, 21 Wn. App. 2d at 658-59. The two-prong test "'reflect[s] two sets of values—treating defendants fairly and protecting 'interstate federalism.'" <u>Duell</u>, 26 Wn. App. 2d at 900 (quoting <u>Ford</u>, 592 U.S. at 360).

The first prong requires the plaintiff to show that the defendant took some act by which they purposefully availed themself of the privilege of conducting activities within the forum state. <u>Ford</u>, 592 U.S. at 359. "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" <u>Id.</u> (quoting <u>Keeton v. Hustler Magazine, Inc.</u>, 465 U.S. 770, 774, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)). Rather, the contacts must show that the defendant deliberately "'reached out beyond'" their home by, for example, "'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." <u>Id.</u> (alteration in original) (quoting <u>Walden v. Fiore</u>, 571 U.S. 277, 285, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014)). The second prong, the class of claims, requires that the plaintiff's claims "'arise out of or relate to the defendant's contacts'" within the forum state. <u>Id.</u> (quoting <u>Bristol-Myers</u>, 582 U.S. at 262). This does not require direct causation between the plaintiff's cause of action and the defendant's activities, but it also "does not mean anything goes." <u>Id.</u> at 361-62.

"[T]he phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." Id. at 362.

Though "a corporation's actions cannot be simply imputed to a corporate officer or employee for purposes of determining whether there are minimum contacts necessary to establish jurisdiction, …. it is just as true that an officer or employee is not automatically shielded from personal jurisdiction just because his contacts occurred in the context of his employment." Failla v. FixtureOne Corp., 181 Wn.2d 642, 651, 336 P.3d 1112 (2014) (citing Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984)). Rather, "'[e]ach defendant's contacts with the forum State must be assessed individually.'" Id. (citing Calder, 465 U.S. at 790; Davis v. Metro Prods., Inc., 885 F.2d 515, 522 (9th Cir.1989)). A Washington court determines personal jurisdiction on a case-by-case basis. Id.

Taebi argues that 3S Network cannot establish purposeful availment under the first prong of the Ford test because it is presumed that the harm caused by Taebi's alleged tortious conduct was suffered at 3S Network's principal place of business in California. Taebi refers to a part of this court's analysis in SeaHAVN, Ltd. v. Glitnir Bank, wherein we considered the issue of whether plaintiff SeaHAVN established specific personal jurisdiction over defendant Glitnir under RCW 4.28.185(1)(b), which authorizes long-arm jurisdiction based on a defendant's commission of a tortious act within Washington that is established "when the injury occurs within our state." 154 Wn. App. 550, 569-70, 226 P.3d 141 (2010), abrogated on other grounds by Noll v. Am. Biltrite Inc., 188 Wn.2d 402, 412, 395 P.3d 1021 (2017). We concluded that Glitnir was not subject to jurisdiction under RCW 4.28.185(1)(b) because the alleged

25

misrepresentations did not occur in Washington. Id. at 570. In the context of that analysis, we addressed SeaHAVN's argument that it suffered harm from the relevant conduct in Washington by noting that the "general rule [that] a business entity suffers harm at its principal place of business," which was in Monte Carlo, Monaco. Id. at 570 n.3. The SeaHAVEN court's analysis under RCW 4.28.185(1)(b) is not relevant to the present question of whether 3S Network has made a showing of specific personal jurisdiction under RCW 4.28.185(1)(a) based on Taebi's transaction of business within Washington that comports with federal due process. See RCW 4.28.185(1) ("Any person … who in person or through an agent does any of the acts in this section enumerated, thereby submits said person … to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts") (emphasis added).[15]

Here, 3S Network presented sufficient factual circumstances to support a prima facie case that Taebi deliberately and personally reached out to Washington to use resources in the state to form the competing Washington-based corporation Zenisco, and to establish an employment relationship to provide Washington-based services for client SAC Wireless that he and his business partner Riahinezhad allegedly stole from 3S Network for Zenisco.

The record supports a reasonable inference that Taebi and Riahinezhad used 3S Network's equipment and materials in Washington to start their co-owned company

---

[15] See also Walden, 571 U.S. at 283-86, 289-91 (stating, in an intentional tort case, "an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State" and "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way" in accordance with the minimum contacts test).

Zenisco. It is undisputed that "[d]uring the time that Riahinezhad and Taeibi [sic] conspired to take clients and employees of 3S [Network] as detailed in … [3S Network's] Complaint, they did so from Riahinezhad's Washington State location."

As referenced above, "[a] defendant purposefully avails itself when it reaches out beyond its home state and into another in order to 'deliberately exploi[t]' a market in the forum State." Downing, 21 Wn. App. 2d at 663 (quoting Walden, 571 U.S. at 285). "Even one action or contact with the forum state may justify personal jurisdiction over a corporation when that contact creates a substantial connection with the forum." Id. (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 2 L. Ed. 2d 223 (1957)). Though not necessary, a defendant's physical entry into the forum state, either by the defendant in person or through an agent, goods, mail, or some other means, is a relevant contact. Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); Walden, 571 U.S. at 285).

Washington courts have interpreted RCW 4.28.185(1)(a) to apply to situations in which nonresident defendants have shown sufficient contacts through the hiring of employees in Washington to support the reasonable anticipation of defending related lawsuits in our state. E.g., Failla, 181 Wn.2d at 651-54 (discussing Toulouse v. Swanson, 73 Wn.2d 331, 334, 438 P.2d 578 (1968); Thornton v. Interstate Sec. Co., 35 Wn. App. 19, 23-25, 666 P.2d 370 (1983)).

The instant record supports the reasonable inference that around June 2016, Taebi recruited 3S Network employee Lyday, who was living and working in Washington, to work for his competing company Zenisco.

27

During his employment with 3S Network, Taebi directly managed 3S Network's relationship with SAC Wireless and was the main point of contact between 3S Network and SAC Wireless for work completed in Washington. When Taebi quit his job at 3S Network in September 2016, 3S Network was aware that Taebi and Riahinezhad had fraudulently concealed the existence of Zenisco while they managed client relationships for 3S Network. Around this same time, the record supports that Taebi met in-person with Lyday in Spokane and hired him to help run Zenisco's Washington operations and to perform work for SAC Wireless in Washington. Lyday provided services for SAC Wireless on behalf of Zenisco in Spokane for about six months. Taebi's email exchange with SAC Wireless supports that Taebi, through his chief operation officer role with Zenisco, continued a business relationship between Zenisco and SAC Wireless in Washington until at least August 2017.

We are unpersuaded by Taebi's argument that the 2017 email is not a relevant contact because it occurred almost one year after his alleged tortious interference with 3S Network's business relationship with SAC Wireless. 3S Network's complaint against Taebi is premised on the fact that he and his business partner have capitalized on business relationships with clients that they stole from 3S Network, including SAC Wireless, for their Washington-based company Zenisco. A court's exercise of specific jurisdiction over a claim requires the existence of an affiliation between the forum and the underlying controversy, "principally an activity or an occurrence that takes place in the forum state." Downing, 21 Wn. App. 2d at 672-73. 3S Network has established such an affiliation here by showing that Taebi's contacts with Washington have not been random or attenuated but are related to business ventures in Washington that provide

the basis for 3S Network's claims that this court, for the purposes of this personal jurisdiction analysis, must assume are true. We conclude that 3S Network has made a prima facie showing of a Washington court's specific personal jurisdiction over Taebi based on his contacts with Washington that relate to 3S Network's claims against him.

Apart from 3S Network's prima facie showing of specific personal jurisdiction, Taibi argues that California is a more convenient forum for 3S Network, Taebi, and possible witnesses. Unlike our sister division, see Downing, 21 Wn. App. 2d at 659, 678-81, we have not interpreted Ford as declaring the consideration of "'fairness and reasonableness'" as an additional step in the determination of personal jurisdiction over a defendant beyond the two-prong test discussed above. Duell, 26 Wn. App. 2d at 899-900. Nonetheless, we may consider a defendant's sufficient minimum contacts with Washington in light of additional factors, including the defendant's burden in responding to the lawsuit in Washington, Washington's interest in applying its law and providing a forum, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and Washington's interest in furthering fundamental social policies. Downing, 21 Wn. App. 2d at 679 (citing Burger King Corp., 471 U.S. at 476-77).

It is only in rare cases that the exercise of personal jurisdiction will not comport with fairness when the nonresident defendant has purposefully established minimum contacts with the forum state. Id. The due process clause cannot be wielded as a territorial shield to avoid interstate obligations that a defendant voluntarily assumes. Burger King Corp., 471 U.S. at 474.

29

Given that modern transportation and communications render defending oneself in another state less burdensome, a nonresident defendant will generally not suffer unfairness by litigating in another forum. Id. For this reason, Taebi's objection that he, California-based 3S Network, and possible witnesses must travel to Washington is not sufficient to show that litigation in Washington is unfair or unreasonable.

Taebi's additional assertion that "pertinent documents are also likely in California" is not supported in the record. Here, the underlying lawsuit and related evidence concern both parties' business activities and dealings with employees in Washington. 3S Network alleges that Taebi, a 3S Network employee who managed communication with client SAC Wireless for work in Washington, improperly recruited another employee, Lyday, who at the time worked and lived in Washington, for competitor Zenisco and that Taebi interfered with 3S Network's relationship with SAC Wireless for the benefit of Zenisco's business activities in Washington. It goes without saying that Washington has an interest where its residents are used to exploit business opportunities grounded in tortious interference with other business entities that serve Washingtonians. Taebi has not established that additional considerations of fairness weigh against Washington's exercise of personal jurisdiction over him where the record supports he has had minimum contacts in the state. See Downing, 21 Wn. App. 2d at 679-80.

Accordingly, we reverse the trial court's order dismissing 3S Network's lawsuit against Taebi for lack of personal jurisdiction and remand for further proceedings.

Trial Court's Denial of Attorney Fees

Zenisco and Riahinezhad argue on cross-appeal that the trial court abused its discretion in denying their motion for attorney fees on the basis that 3S Network's lawsuit was frivolous under RCW 4.84.185.[16]

We review a trial court's decision to award attorney fees or sanctions for a frivolous action for abuse of discretion. Jeckle v. Crotty, 120 Wn. App. 374, 387, 85 P.3d 931 (2004); Dave Johnson Ins. v. Wright, 167 Wn. App. 758, 786, 275 P.3d 339 (2012). RCW 4.84.185 authorizes a trial court to award a prevailing party attorney fees for opposing a frivolous action. The statute requires that a lawsuit must be frivolous in its entirety. Biggs v. Vail, 119 Wn.2d 129, 133, 830 P.2d 350 (1992). If any of the asserted claims are not frivolous, the lawsuit is not frivolous. Id. at 133, 136-37; Forster v. Pierce County, 99 Wn. App. 168, 183-84, 991 P.2d 687 (2000). A lawsuit is frivolous when it cannot be supported by any rational argument on the law or facts. Stiles v. Kearney, 168 Wn. App. 250, 260, 277 P.3d 9 (2012); Timson v. Pierce County Fire Dist. No. 15, 136 Wn. App. 376, 386, 149 P.3d 427 (2006). "Complaints which are 'grounded in fact' and 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law' are not [frivolous or] 'baseless' claims." Subcontracting Concepts CT, Inc. v. Manzi, 26 Wn. App. 2d 707, 717, 529 P.3d 440 (2023) (internal quotation marks omitted) (quoting Bryant v. Joseph Tree Inc., 119 Wn.2d 210, 219-20, 829 P.2d 1099 (1992)).

---

[16] Not at issue on appeal is Zenisco and Riahinezhad's additional request for statutory attorney fees and costs under RCW 4.84.010 and .030, which was not disputed below and which the trial court granted.

Here, the trial court concluded that Zenisco and Riahinezhad did not establish that each of 3S Network's initially pled claims, including its request for injunctive relief, were frivolous.

Zenisco and Riahinezhad argue that several of 3S Network's claims, including the fraud and tortious interference claims at issue in the instant appeal, are frivolous because 3S Network could not establish that it diligently investigated employees Riahinezhad and Taebi's fraudulent creation of Zenisco to survive summary judgment. However, establishing that evidence was insufficient to sustain a claim does not necessarily establish that the claim is frivolous or sanctionable. This would mean that every plaintiff who unsuccessfully defends against a summary judgment motion would be, as a matter of law, subject to fees and sanctions under RCW 4.84.185. This is not the law. The trial court did not abuse its discretion in denying Zenisco and Riahinezhad attorney fees under RCW 4.84.185.

Attorney Fees and Sanctions on Appeal

A.  *Attorney Fees under RAP 18.1*

We may grant attorney fees under RAP 18.1 if applicable law grants to the requesting party the right to recover reasonable attorney fees or expenses on appeal. RAP 18.1(a). Zenisco and Riahinezhad assert that they are entitled to attorney fees on appeal under RAP 18.1 based on RCW 4.84.185, which authorizes the award of fees and reasonable expenses to a prevailing party for having to oppose a frivolous action or defense. "RCW 4.84.185 does not apply to a request for attorney fees on appeal." Wash. Election Integrity Coal. United v. Schumacher, 28 Wn. App. 2d 176, 205-06, 537 P.3d 1058 (2023) (citing Hanna v. Margitan, 193 Wn. App. 596, 614-15, 373 P.3d 300

(2016), <u>review denied</u>, 2 Wn.3d 1025, 544 P.3d 28 (2024)). "Attorney fees for a frivolous appeal are available only under RAP 18.9(a)." <u>Hanna</u>, 193 Wn. App. at 614. Zenisco and Riahinezhad do not request attorney fees under RAP 18.9(a).

Taebi requests attorney fees and costs under RAP 18.1 based on RCW 4.28.185(5), which grants a court the discretion to award attorney fees "to a defendant who, having been hailed into a Washington court under the long-arm statute, 'prevails in the action.'" <u>Scott Fetzer Co. v. Weeks</u>, 114 Wn.2d 109, 112, 120-21, 786 P.2d 265 (1990); <u>Payne v. Saberhagen Holdings, Inc.</u>, 147 Wn. App. 17, 36, 190 P.3d 102 (2008). Taebi does not prevail in this action to justify an award under RCW 4.28.185(5).

## B. Attorney Fees and Sanctions under RAP 18.9

Lastly, Taebi asks this court to award attorney fees and impose sanctions against 3S Network under RAP 18.9, arguing that 3S Network's "untimely" appeal is frivolous based on 3S Network's previous withdrawal of its earlier appeal.[17] 3S Network's instant appeal upon the trial court's final judgment disposing of the case is not untimely.[18] The dismissal of 3S Network's prior appeal did not prejudice its ability to pursue appeal of the trial court's summary judgment order in favor of Taebi upon the trial court's final judgment as a matter of right. <u>See</u> <u>Fox</u>, 115 Wn.2d at 502-05; <u>In re Determination of</u>

---

[17] "'An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal.'" <u>Kinney v. Cook</u>, 150 Wn. App. 187, 195, 208 P.3d 1 (2009) (quoting <u>Lutz Tile, Inc. v. Krech</u>, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).

[18] Following 3S Network's instant appeal, Taebi moved to dismiss the appeal based on the prior discretionary review proceeding and requested sanctions. Denying the motion, a commissioner of this court's cited the August 11, 2021, ruling issued under the prior appeal and ruled that "the dismissal of the prior matter does not prejudice 3S Network's ability to appeal the August 28, 2020, summary judgment order after all claims as to all parties in the lawsuit were resolved." A panel of this court denied Taebi's motion to modify the commissioner's ruling.

Rts. to Use of Surface Waters of Yakima River Drainage Basin, 198 Wn.2d 687, 703-06, 498 P.3d 911 (2021). The record presents no question that 3S Network otherwise timely filed its notice of appeal after the trial court's entry of final judgment. As the non-prevailing party, Taebi also has not established that the appeal is frivolous. His request is without merit and denied.

CONCLUSION

We affirm the trial court's summary judgment dismissal of 3S Network's claims against Zenisco and Riahinezhad and affirm the trial court's order denying attorney fees to Zenisco and Riahinezhad under RCW 4.84.185. We reverse summary judgment dismissal of 3S Network's claims against Taebi for lack of personal jurisdiction and remand for further proceedings as to 3S Network's claims against Taebi.

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

_____
Coburn, J.

WE CONCUR:

_____
Feldman, J.

_____
Birk, J.